IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 JUL 14  PM 3: 39

CLERK OF COURT

| | | |
|---|---|---|
| CYNTHIA VILLINES, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-00304-A |
| | § | |
| KROGER TEXAS, L.P., | § | |
| Defendant | § | JURY DEMANDED |

---

### DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT KIEL

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1.     Defendant Kroger Texas L.P. moves to strike Plaintiff's vocational rehabilitation expert Jeffrey T. Kiel because Plaintiff has not timely or properly designated Mr. Kiel in accordance with this Court's Orders.

## I.
## BACKGROUND AND SUMMARY

2.     Plaintiff is a former employee of Defendant Kroger Texas L.P., a workers' compensation nonsubscriber.  Plaintiff was injured on June 21, 2011, when she tripped and fell over a work dolly while working in the deli section of the store.  Plaintiff filed suit in state court on February 28, 2013, alleging Defendant was negligent, and Defendant subsequently removed this case to federal court.  Nearly three weeks after the expert designation deadline, Plaintiff served, but did not file, an incomplete expert designation identifying a retained vocational rehabilitation expert Jeffrey Kiel.  Because Defendant would be prejudiced if this Court allowed Kiel to testify, Defendant moves to strike Kiel's expert testimony.

## II.

### PLAINTIFF'S PURPORTED DESIGNATION OF KIEL AND THIS COURT'S ORDERS

3.       The Federal Rules of Civil Procedure require Plaintiff to make expert disclosures at the time this Court ordered.[1] This Court's Order Setting Schedule and Providing Special Pretrial Instructions (Document No. 21), paragraph 15, states:

> Each party shall designate experts by filing a written designation including the name, address, and telephone number of each expert who may be called to testify and make the disclosures required by Fed. R. Civ. P. 26(a)(2) by serving the required written reports at least 120 days before the [August 4, 2014[2]] pre-trial conference date.

4.       Though the original expert designation deadline was April 6, 2014, this Court has twice extended the expert designation deadline in this case until June 6, 2014,[3] and June 20, 2014,[4] and also denied a third request for extension and continuance of the trial.[5] This case is set for pretrial conference on August 4, 2014, and trial on September 8, 2014.[6] As of the time of filing this motion, Plaintiff still has not filed any written expert designation with this Court, or served a report that fully complies with Fed. R. Civ. P. 26(a)(2).

5.       On July 9, 2014, nearly three weeks after the expert designation deadline, and less than a month before the pretrial conference, Plaintiff served Defendant with a discovery document entitled Initial Disclosures [sic], attached as Exhibit "A," which states on p. 3 under the heading "V. EXPERTS – FED. R. CIV. P. 25(A)(2):"

> Retained Expert:
> Vocational Solutions, LLC

---

[1] Fed. R. Civ. P. 26(a)(2)(D).
[2] See Order Setting Schedule and Providing Special Pretrial Instructions, para. 5 (Document No. 21).
[3] See April 8, 2014 Order Granting Joint Motion for Extension of Expert Deadline (Document No. 23).
[4] See June 2, 2014 Order Granting Second Motion for Extension of Expert Deadline (Document No. 30).
[5] See June 24, 2014 Order (Document No. 33).
[6] See Order Setting Schedule and Providing Special Pretrial Instructions, para. 5 (Document No. 21).

> Jeffrey T. Kiel M.Ed, CRC, CVE, CCM, CEAS, ABVE/D
> 11703 Huebner Rd., Suite #106-458
> San Antonio, Texas 78230
> 210-852-5837

Plaintiff also attached a copy of Mr. Kiel's final supplemental report, which did not comply with the requirement of Fed. R. Civ. P. 26(a)(2)(vi) to include a statement of the expert's compensation. Plaintiff did not file the designation as required by the Order Setting Schedule and Providing Special Pretrial Instructions.

6.    Prior to this Court's expert designation deadline, during a June 11, 2014, mediation, Plaintiff provided Defendant with a copy of Mr. Kiel's June 9, 2014, report (which also does not contain a statement of Kiel's compensation).[7]  After this Court's expert designation deadline, on July 1, 2014, Plaintiff provided Defendant with a copy of Mr. Kiel's June 19, 2014, supplemental report.[8]  Neither of these actions were sufficient to constitute compliance with this Court's Order, which required Plaintiff to both file and serve a written expert designation that complies with Fed. R. Civ. P. 26(a)(2) before the June 20, 2014 expert designation deadline.

## III.
### THIS COURT SHOULD STRIKE KIEL BECAUSE
### PLAINTIFF NEITHER TIMELY NOR PROPERLY DESIGNATED HIM

7.    Striking Plaintiff's expert Kiel for failing to timely designate him in accordance with this Court's orders and the Federal Rules of Civil Procedure is within the discretion of this Court.[9]  Further, Defendant would be highly prejudiced if Mr. Kiel is permitted to testify. Plaintiff served her designation only three business days before the end of the discovery period,

---

[7] *See* Exhibit "B."
[8] *See* Exhibit "A."
[9] *See, e.g., Bradley v. United States,* 866 F.2d. 120, 126-27 (5th Cir. 1989).

which is today, July 14, 2014.[10]  Even if Plaintiff had filed a proper designation and provided a complete report on July 9, 2014, Defendant would have no time to depose Mr. Kiel prior to the end of the discovery period.  Further, Defendant has no opportunity to designate any rebuttal expert before the end of the discovery period.

8.   Plaintiff also has no valid excuse for not filing and serving a proper expert designation complying with Fed. R. Civ. P. 26(a)(2) and this Court's Orders before the deadline. This suit was originally filed on February 28, 2013, and Kiel's reports are dated June 9 and June 19, 2014 – both before the June 20, 2014 expert designation deadline.  Further, Kiel's report indicates that he evaluated Ms. Villines on May 30, 2014, well before the expert designation deadline.  Finally, Kiel's compensation in connection with this case is within his own knowledge.

9.   Plaintiff has not sought leave of Court to late-designate Kiel.  Nonetheless, this Court has already denied the parties' request for a continuance and to extend the expert designation and discovery deadlines.

**IV.**

**EVEN IF THIS COURT DOES NOT STRIKE MR. KIEL'S TESTIMONY ENTIRELY,
<u>KIEL IS NOT QUALIFIED TO OPINE ON PLAINTIFF'S LOST WAGES AND EARNING CAPACITY</u>**

Kiel's report contains certain opinions regarding Plaintiff's lost wages and earning capacity.  Kiel's curriculum vitae does not describe any qualifications to testify as an expert economist, accountant, or other person with specialized expertise to testify regarding lost wages or lost earning capacity.  In fact, Kiel admits in his report that "[s]ince these numbers are based on a vocational expert calculation and not an economist or accountant, these numbers do not consider present value calculations that take into consideration inflation rates,

---

[10] The designation was served via facsimile after business hours on July 9, 2014, so counsel for defendant did not receive it until July 10, 2014, two business days before the end of the discovery period.

consumer price index, and bond or investment rates."[11]   Federal Rule of Evidence 702(a) requires that an expert's opinion help the trier of fact to understand the evidence or determine a fact in issue.[12]  Kiel's opinions regarding lost wages and lost earning capacity are not relevant, as the jury is capable of performing Kiel's mathematical calculations without his help.  Even if the Court does not strike Kiel's entire testimony due to its untimeliness and incompleteness, it should not permit Kiel to testify regarding Plaintiff's lost wages and lost earning capacity.

WHEREFORE, PREMISES CONSIDERED, Defendant Kroger Texas L.P. moves this Court to strike Plaintiff's expert Jeffrey Kiel, and for such other and further relief to which it may be entitled.

Respectfully submitted,

Donna C. Peavler
Attorney-in-charge
State Bar No. 00783887
dpeavler@peavlergroup.com
Julia L. Sinor
State Bar No. 24032540
jsinor@peavlergroup.com
THE PEAVLER GROUP
3400 Carlisle Street, Suite 430
Dallas, Texas 75204
(214) 999-0550 (telephone)
(214) 999-0551 (facsimile)

**ATTORNEYS FOR DEFENDANT**

---

[11] *See* Exhibit "A" and the attached Kiel's June 19, 2014 Report, p. 17.
[12] *See* Fed. R. Ev. 702(a); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-93 (1993).

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant has conferred with Counsel for Plaintiff regarding the merits of this motion, and Plaintiff is opposed.   This Motion is therefore submitted to the Court for determination.

_____
Julia L. Sinor


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record in this cause pursuant to and in accordance with the Federal Rules of Civil Procedure on July 14, 2014.

_____
Julia L. Sinor

# EXHIBIT A

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CYNTHIA VILLINES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION: 4:13-CV-304-A** |
| | § | |
| **KROGER TEXAS, L.P.,** | § | |
| | § | |
| **Defendant.** | § | |

---

### PLAINTIFF'S INITIAL DISCLOSURES

---

**TO:** **KROGER TEXAS, L.P., DEFENDANT HEREIN, BY AND THROUGH ITS COUNSEL OF RECORD, DONNA PEAVLER AND JULIE SINOR OF THE PEAVLER GROUP, P.C., 3400 CARLISLE STREET, SUITE 430, DALLAS, TEXAS 75204.**

Pursuant to *Fed. R. Civ. P.* 26(a)(1), Plaintiff Cynthia Villines, respectfully serves the following *First Amended Initial Disclosures.*

### I. PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION—*FED. R. CIV. P.* 26(A)(1)(A)(I):

#### A. Plaintiff:

Plaintiff Cynthia Villines has general knowledge regarding her claims, both on the issues of liability and damages.

Cynthia Villines
c/o Julie Wolf
Modjarrad & Abusaad
100 N. Central Expwy., Suite 1000
Richardson, Texas 75080

#### B. Defendants:

Defendant presumably has general knowledge regarding Plaintiff's claims, both on the issues of liability and damages:

KROGER TEXAS, L.P.
c/o Julie Sinor
The Peavler Group, P.C.

---

**PLAINTIFF'S FIRST AMENDED INITIAL DISCLOSURES**
**Page 1 of 3**

3400 Carlisle Street, Suite 430
Dallas, Texas 75204

All persons designated by Defendant are incorporated herein.

### C. Other Individuals

PRESTON OWENS
JEFF CRENSHAW
APRIL (LAST NAME UNKNOWN)
c/o Julie Sinor
The Peavler Group, P.C.
3400 Carlisle Street, Suite 430
Dallas, Texas 75204

David Villines
3100 W. DM 917
Joshua, Texas 76058

All persons designated by Defendant are incorporated herein.


## II. DESCRIPTION BY CATEGORY AND LOCATION OF DISCOVERABLE INFORMATION---*FED. R. CIV. P.* 26(A)(1)(A)(II):

### A. Discoverable Information in the Possession of Plaintiff:

Medical information relating to Plaintiff's injuries sustained as a result of the accident, and information relating to the work performed on the premises, safety hazards, employees, management, and daily work activities.

### B. Discoverable Information in the Possession of Others:

1. Claim Investigation File
2. All written communication between Plaintiff and Defendant, including all proof of loss forms.
3. Any and all writings of any kind, recording or memorialized meetings or conversations engaged in by any and all employees, agents, or representatives or any other person acting on behalf of Defendant.
4. All documents relating to company guidelines, policies or procedures that serve as protocol for accidents on the premises and work injuries.
5. All reports made of the incident by any person or company on the premises.

Records in the possession of the records custodian for Defendant likely to contain discoverable information:

## III. COMPUTATION OF DAMAGES BEING CLAIMED BY DISCLOSING PARTY—*FED. R. CIV. P.* 26(A)(1)(A)(III):

Actual damages in the amount of $112,370.71 representing Plaintiff's medical damages at this time. Plaintiff will supplement all records and bills as these records are obtained.

## IV. INSURANCE AGREEMENT, IF ANY—*FED. R. CIV. P.* 26(A)(1)(A)(IV)):

None

## V. EXPERTS—*FED. R. CIV. P.* 26(A)(2):

Baylor Institute for Rehabilitation
909 N. Washington Ave.
Dallas, Texas 214-841-2625

Opinion: Records still being obtained. As soon as they are obtained, a copy with the opinion of the doctor will be produced.

Prestige Imaging
1616 Wabash Ave.
Fort Worth, Texas
817-348-9777

Opinion: bone edema from injury in medial patella and medial femoral condyle

Daniel B. Wagner DO
556 8th Ave.
Fort Worth, Texas
817-336-6222

Opinion: Knee Contusion

Texas Health Harris Methodist Cleburne
201 Walls Dr.
Cleburne, Texas
817-641-2551

Opinion: hypovolemia, vomiting, tachycardia, hypertension, and anxiety

Zynex Medical
9990 Park Meadows Drive
Lone Tree, CO 80124

Opinion: Medications

---

**PLAINTIFF'S FIRST AMENDED INITIAL DISCLOSURES**
**Page 3 of 3**

McConnell Orthopedic Clinic
4725 Wellington Street
Greenville, Texas 75401
903-450-4242

Opinion: Left knee pain and stiffness/arthrofibrosis and post traumatic arthropathy, Localized secondary osteoarthritis, ganglion, and prepatellar tendonitis, possible meniscal tear, post-traumatic articular cartilage damage, anterolateral compartment syndrome, patellofemoral joint articular damage lateral patella tracking. ACL laxity consistence with partial tear, bone edema related to contusion from injury within the medial patella dn the medial femoral condyle, surgery recommendation

Kenneth R. Horak DO
10830 N Central Expy. Suite 120
Dallas, Texas 75231

Opinion: Performed arthroscopic surgery. Records still being obtained. As soon as they are obtained, a copy with the opinion of the doctor will be produced.

Affinity Healthcare System Inc./ Texas Clinic Surgery Center
6957 W Plano Parkway
Plano, TX 75093

Opinion: Surgery was performed on Plaintiff's knee. Records still being obtained. As soon as they are obtained, a copy with the opinion of the doctor will be produced.

MEDISTAT
2617 Bolton Boone Suite B
Desoto, TX 75115

Opinion: Preop Physical for Surgery—left knee internal derangement

Chiropractic & Sports Clinic
1649 W. Henderson St.# A
Cleburne, TX 76033

Opinion: Post-surgical changes and knee effusion

North Texas Radiology
2911 Oak Park Circle
Fort Worth, Texas 76109
817-923-6858

Opinion: Records still being obtained. As soon as they are obtained, a copy with the opinion of the doctor will be produced.

---

Fort Worth Healthcare Systems
1002 Montgomery St.
Fort Worth, Texas 76107

Opinion: Due to knee pain, patient was provided with a progressive rehabilitation plan. Prognosis was fair.

A Medical Advantage Healthcare
214 W. Colorado Blvd
Dallas, TX 75208

Opinion: Status post ACL reconstruction of left knee, chondromalacia of the left knee, left knee pain from internal derangement

Monticello Diagnostic Imaging
3712 West 7th Street
Fort Worth, TX 76107

Opinion: joint effusion, lateral patellar subluxation, hypoplastic appearance medial trochlea, soft tissue thickening and stranding within Hoffa's fat space, mild arthrofibrosis may be present, fusiform thickening patellar tendon, mid to proximally, likely hypertrophic changes and tendinopathy. Grade 3 to 4 chrondromalacia, irregularity medial insertion patellar retinaculum, marrow edema about the lateral most aspect tibial plateau adjacent to the fibula, thickening of MCL

Western Medical Center
Stephen L Wilson, M.D., P.A.
1015 South Henderson
Ft. Worth, Texas 76104
817-870-1043

Opinion: Physical examination was hard to perform because of hypersensitivity when the skin is touched. Range of motion protocol is gone over with the patient. Aquatic whirlpool or hot tub would benefit the patient. Topical Biofreeze is recommended.

Injured Workers Pharmacy
P.O. Box 338
Methuen, MA 01844
Opinion: Medications

Phil's Accidents Meds
7509 Inwood Road, Suite 100
Dallas, TX 75209

Opinion: Medication

---

**PLAINTIFF'S FIRST AMENDED INITIAL DISCLOSURES**
**Page 5 of 3**

All opinions and diagnosis are present in the medical records previously produced to Defendant. All abvove experts are non-retained treating physicians.

All Medical records have been or are in the process of being produced. All opinions rendered by the above providers are detailed in the records for each provider.

Retained Expert:

Vocational Solutions, LLC
Jeffery T. Kiel M.Ed., CRC, CVE, CCM, CEAS, ABVE/D
11703 Huebner Rd. Ste. #106-458
San Antonio, Texas 78230
210-852-5837

Plaintiff has produced Mr. Kiel's first expert report and supplemental expert report that contains all opinions reached by the expert.

Respectfully submitted,

**MODJARRAD & ABUSAAD, LAW FIRM**

By: _____
**Julie Wolf**
Texas Bar No. 24051542
JWOLF@MODJARRAD.COM

100 N. Central Expwy., Suite 1000
Richardson, Texas, 75080
Tel. (972) 789-1664
Fax. (972) 789-1665

*Attorney for Plaintiff*

# TABLE OF CONTENTS

1. EMPLOYABILITY AND REPORT INFO……………………………………………………2

2. CONFIDENTIALITY ISSUES………………………………………………………………3

3. PURPOSE OF REFERRAL…………………………………………………………………3

4. REFERRAL QUESTIONS……………………………………………………………………4

5. VOCATIONAL EVALUATION METHODOLOGY……………………………………………4

6. VOCATIONAL EALUATION ASSUMPTIONS……………………………………………6

7. COMPETITIVE EMPLOYMENT EVALUATION………………………………………………6

8. FORMULATION OF OPINIONS……………………………………………………………7

9. RECORDS REVIEW…………………………………………………………………………7

10. PRE-EXISTING MEDICAL CONDITIONS…………………………………………………8

11. VOCATIONAL DIAGNOSTIC INTERVIEW…………………………………………………8

12. EDUCATIONAL AND TRAINING BACKGROUND………………………………………9

13. WORK HISTORY……………………………………………………………………………9

14. ANALYSIS OF PAST WORK/PRE-INJURY EARNINGS ANALSIS…………………………11

15. PHYSICAL COMPLAINTS…………………………………………………………………12

16. ACTIVITIES OF DAILY LIVING……………………………………………………………12

17. MEDICAL TREATMENT……………………………………………………………………13

18. TRANSFERABLE SKILLS ANALYSIS……………………………………………………14

19. ASSISTIVE TECHNOLOGY…………………………………………………………………14

20. VOCATIONAL CONCLUSIONS……………………………………………………………15

21. RESIDUAL EARNING CAPACITY…………………………………………………………15

22. PROFESSIONAL OPINIONS………………………………………………………………16

   APPENDIX A, CV……………………………………………………………………………18

   APPENDIX B, WORK CITED…………………………………………………………………20

   APPENDIX C, GLOSSARY …………………………………………………………………21

   APPENDIX D, Recent Case Summary…………………………………………………………23



# Vocational Solutions, LLC

11703 Huebner Rd Ste #106-458 San Antonio, TX 78230

Phone: 210-852-5837          Fax: 210-369-9566

**Jeffrey T. Kiel M.Ed., CRC, CVE, CCM, CEAS, ABVE/D**
Partner, Director of Vocational Rehabilitation Counseling

Diplomate, American Board of Vocational Experts

Board Certified Vocational Expert

Certified Rehabilitation Counselor

Certified Case Manager

Certified Ergonomic Assessment Specialist

## VOCATIONAL ANALYSIS, EARNINGS CAPACITY AND EMPLOYABILITY REPORT

| | |
|---|---|
| **EVALUEE:** | Cynthia Villines, Plaintiff |
| **CLAIMANT'S AGE:** | 51 |
| **DATE OF BIRTH:** | July 25, 1962 |
| **CASE:** | Cynthia Villines v. Kroger Texas, L.P. |
| **FIRM:** | Modjarrad & Abusaad law firm |
| **ATTORNEY:** | Julie Wolf, Esq. |
| **DATE OF INJURY:** | June 21, 2011 |
| **CAUSE No.:** | 4:13-CV-304-A |

## EMPLOYABILITY AND EARNING CAPACITY EVALUATION

Mrs. Cynthia Villines is the Plaintiff referred for an employability and earning capacity evaluation by the Law firm of Modjarrad & Abusaad. This report includes findings of Mrs. Villines' employability, an assessment of any transferable skills learned from past occupations, earnings capacity, labor market analysis, and residual functional limitations that involve any impairment when comparing pre-injury to post-injury residual functioning. Mrs. Villines attended a telephonic vocational evaluation on May 30, 2014 at 2:00 P.M. that lasted approximately 1.5 hours.   Information learned from the evaluation is contained in this report in the sections that include Activities of Daily Living, education, and work history sections.

2

All work was completed by a Board Certified Vocational Expert

Jeffrey T. Kiel, M.Ed., CRC, CVE, CCM, CEAS, ABVE/D

Diplomate, American Board of Vocational Experts

Board Certified Vocational Expert

## 1 BACKGROUND:

Mrs. Villines is a fifty-one year old female residing in Joshua, TX who endured a work-related injury while working at Kroger. She was employed as a baker/delicatessen worker. On June 21, 2011, she was bringing a baking sheet to the sink and there was a dolly in the middle of the floor that was not supposed to be there. In turn, she tripped over the dolly and the entire weight fell forward and landed on her left knee. Mrs. Villines was in such a degree of pain that she could not get up. It took her approximately ten minutes to gather herself. She immediately reported her injury at her workstation and then was offered to be transported to the hospital but decided to have her husband, David, pick her up instead and then was taken to a clinic in Burlington, Texas. She underwent diagnostic studies that included x-rays and a referral for physical therapy that only intensified her physical condition. About two months later, she finally had a MRI and the diagnostic impressions revealed an ACL tear. Additionally, there was a muscle injury to the lower part of her left leg. Unfortunately, she was dismissed from her job since she could not return-to-work. Apparently, she was unable to obtain the assistance necessary through Worker's Compensation. Mrs. Villines was referred to Dr. McConell, M.D., Board Certified Orthopedic Surgery who scheduled surgery that she underwent on March 5, 2012.

## 2 CONFIDENTIALITY ISSUES

Mrs. Villines was evaluated by the undersigned in compliance with the ethics of a Certified Rehabilitation Counselor and the American Board of Vocational Experts. All documents are kept locked and secured. After case is closed, all documents are kept locked and secured in a location that is under video surveillance. Documents are professionally shredded and destroyed.

## 3. PURPOSE OF REFERRAL

The purpose is to assess the effect of her disabling conditions on her vocational capacity, employability, loss of access to the labor market, and her post-injury residual functional capacity.

Please note that this vocational expert would like to keep this report open to conduct further vocational analysis on Mrs. Villines if necessary. The opinions in this report are formulated and solidified. The specific manner in which Mrs. Villine's vocational disabilities may impede her ability to perform sedentary, light, medium, heavy, and very heavy types of occupations.

3

The vocational opinions expressed in this report are based on various assumptions made in this report. These opinions were formulated using sound vocational principles for job-person matching and job placement. Objective transferable skills analysis was utilized.

The methodology employed is familiar with competent vocational experts and with the career and rehabilitation theory cited in this report can replicate the findings by applying assumptions, methodology, and supporting analysis.

## 4. REFFERRAL QUESTIONS

The following questions were answered objectively using industry specific scientific methodology contained within this report:

1. What is Mrs. Villines's vocational capacity?
2. Could she return to prior work as a Baker/Deli Worker Fast Foods Worker, or Fast Food Manager?
3. Has her prior work provided her with any transferable skills that could be used to perform work requiring less physical capability?
4. What is Mrs. Villine's pre-injury proxy wages?
5. What is Mrs. Villine's post-injury residual earning capacity?
6. What effect have Mrs. Villline's impairments had on her work life?
7. What is the feasibility for Mrs. Villline's to participate in a vocational rehabilitation program?

## 5. VOCATIONAL EVALUATION METHDOLOGY

1. The initial section involves collecting data and facts specific to Mrs. Villine's case by reviewing the medical records and medical restrictions, earning information, and other documents that describe the evaluee's condition. The data provides background information to better understand the evaluee and her medical treatment and to make a determination as to the nature, extent, permanency, and functional limitations of her medical condition.

3. A vocational analysis is performed by Mrs. Villine's past work within a reasonable amount of time. This consists of classifying jobs using standard government codes from the U.S. Department of Labor's Dictionary of Occupational titles (DOT) and O*NET to determine the physical demands, worker functions Specific Vocational Preparation (SVP), skill level, and General Educational Development (GED) of Mrs. Villines's employment. Based on these government publications, information is obtained regarding the skills and competencies, the aptitudes, and job temperaments required for job performance. This helps the vocational expert to determine the evaluee's pre-injury vocational capacity.

4. Based on the information obtained in the review of records, her vocational evaluation and interview, Mrs. Villine's post injury vocational capacity for competitive employment was evaluated.

5. Using the vocational and Assessment of Residual Employability (VDARE) process, a

4

Transferability of Skills Analysis is performed using the Skill Tran and Occubrowse Pro computer programs by aligning past work with work fields, MPSMS, SVP, and physical exertion levels. Mrs. Villines's work history is analyzed to determine her skills, aptitudes, and skill level. Such government publications as the Dictionary of Occupational Titles 4th edition and its supplemental characteristics are used to analyze the skills inherent in Mrs. Villines's past job titles. Mrs. Villines's ability to transfer her skills is learned from previous employment or education other employment. This is within her vocational capacity in the competitive labor market. This involves synthesizing data and information with an emphasis on her ability to return-to-work.

6. Labor Market Access (LMA) analysis was conducted through the development of Mrs. Villines's pre and post injury worker vocational profile made to determine her ability to enter the labor market given her skill level and vocational capacity.

7. A review is made of all of the materials and a vocational expert opinion is formulated as to Mrs. Villines's post-injury vocational capacity, transferable skills, employability, earning capacity, and feasibility of her to receive vocational rehabilitation services.

8. If the individual is found to be employable given the results of her forensic vocational analysis, research is conducted regarding the evaluee's residual earning capacity and the number of such jobs in the local labor market using state and federal government statistics such as OES (Occupational Employment Survey) – State and local OOH (Occupational Outlook Handbook) – National or private labor studies to determine whether jobs exist that Mrs. Villines can perform within the vocational capacity and the current wage for these occupations. This is the standard type of labor market information used and relied upon in the field of Rehabilitation Counseling.

## 6. VOCATIONAL EVALUATION ASSUMPTIONS

The vocational opinions regarding Mrs. Villines's employability, earning capacity, and vocational rehabilitation potential expressed in this report are based on the assumptions that:

1. The records reviewed were complete and accurately reflect Mrs. Villines's physical condition.

2. Mrs. Villines did not intentionally exaggerate or give false information regarding her physical or psychological symptoms.

3. Mrs. Villines's pre-accident vocational functioning is estimated within the average range based on her educational and occupational history.

4. No opinion is reached by this expert as to the causality of Mrs. Villines's medical condition.

5. Since Mrs. Villines' continues to be in pain because of her left leg and knee, her physical limitations are permanent from a vocational perspective.

## 7. COMPETITIVE EMPLOYMENT EVALUATION

The purpose of this employability evaluation is to assess the evaluee's ability to perform competitive employment. Competitive employment, as defined in 34 CFR 361.5(b)(10), means work in the competitive labor market that is performed on a full-time or part-time basis in an integrated setting, and for which an individual is compensated at or above the minimum wage but no less than the customary wage and level of benefits paid by the employer for the same or similar work performed for individuals who are not disabled. A job that is set aside for the person with disabilities is not competitive and the employer is looked at as benficent. The person must be able to produce work at a level that is acceptable to an employer. For instance, the employee producing so many small products per hour.

## 8. FORMUATION OF OPINIONS

The vocational opinions expressed in this report are given within a reasonable degree of certainty or probability as a Rehabilitation Counselor and Vocational Expert.

Since Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960), Vocational Experts, who are professions educated, trained, and skilled in job placement and knowledgeable about labor market conditions, have been asked to formulate vocational opinions about specific job opportunities of a person based on their age, education, background, work experience, and medical condition.

The vocational opinions in this report are based on my education, training, experience, and the information contained in various traditional vocational sources (App. B), including private, federal and state government publications. The current knowledge and methods used in the field of forensic vocational rehabilitation were applied in determining Mrs. Villines' employability and earning capacity.

In addition, the opinions are based on the information available to me at the time of my evaluation, including medical and other records, the evaluee's history as obtained from standardized review of records.

If any of the oral or documentary information provided is false, fictitious, fraudulent, incomplete, or misleading, it may change the conclusions and opinions reached in this employability evaluation. The opinions expressed are case specific to this evaluee. Should there be additional information that becomes available at a later time for my review that significantly changes my vocational opinions, I reserve the right to modify and issue a supplemental report.

## 9. RECORDS REVIEW

- Kroger Associate Incident report dated June 21, 2011 Kroger Associate Safety Handbook. This reports indicates, "Tripped on brown cart walking around corner of table in deli department, fell on cart and landed with all weight on left knee, some noticeable swelling". Report indicates "critical injury".
- Photos of Dolly and Accident scene.
- Transcripts of Cytnhia Villines, Deli Clerk position ACT completed courses 9-25-10 to 9-28-10.
- Kroger Occupational Injury Disease Benefit Plan & Summary Plan Description Amended April 8, 2004.
- First Amended Original Complaint.
- Kroger Company of Dallas, Pre-Certification Request, July 27, 2011.
- Kroger Personnel file, during review, identified Performance Appraisal on 9-25-10, states she was meeting expectations.


**The following income records were reviewed:**

- Tax returns: 2009: $18,055.00 gross wages
- Tax return 2010: $16,718 gross wages
- Tax return 2011: $7,711 gross wages
- Schedule C: Profit or Loss from Business (2011): $18,824.00, David W Villines Service and Car Purc: Service (her husband's work).

**Medical Records reviewed**

- Records from Dr. William A. Thomas, D.O. July 9, 2011.
- Office visit August 31, 2011, Dr. Daniel B. Wagner, D.O.: notes describe left knee as crepitus, locking, popping, swelling, and tenderness.
- Physical Therapy notes.
- MRI Left knee, August 8, 2012 P/Marsh, D.O., lists diagnostic impressions
- Prestige Imaging, July, 2011, William A. Thomas, DO.
- Chiropractic Sports Clinic Lists ACL: Compartment Syndrome caused by previous physical therapy.
- Records from Medistat, Dr. Louise Lamarre, M.D., June 21, 2011,
- Baylor Institute for Rehabilitation, Burleston, TX: PT notes, read to Mrs. Villines cancelling physical therapy sessions because of pain: August 26, 2011.
- Texas Worker Compensation Status reports, Sedgwick Claims, showed return-to-work at sedentary June 21, 2011.
- Dr. McConnell, M.D., Continues with pain, pain tolerance problems, July 11, 2012. Lists medications prescribed Narco and Volzaren Gel (NSAID)
- Dr. McConnell, Orthopedic Clinic, PA, April 24, 2012, 7 weeks of post op knee getting painful with physical therapy, steroid injection mutually agreed.
- Arthroscopic surgery, March 5, 2012, by Dr. John McConnell, M.D., Board certified orthopedic

surgery. Medical documentations indicates medial, lateral, patellofemoral, supra patellar, anterior, intercondylar tears. Describes technical procedure ACL repair reconstruction.

- Key Health Medical Solutions, November 2013. Read a note that three months post fall, Mrs. Villines' Mom came to her home to assist with house work.

*This summary does not preclude other medical records reviewed.

## 10. PRE-EXISTING MEDICAL FINDINGS (unrelated to accident):

- None identified.

## 11. EDUCATIONAL AND TRAINING BACKGROUND

- During the vocational assessment, she reported completing the 9th grade of school while obtaining a GED in approximately 1995-1996.
- She types at 23 words per minute but the speed does not account for typing mistakes. This is based on her self-report.

## 12. VOCATIONAL DIAGNOSTIC INTERVIEW

On Friday May 30, 2014 at 2:00 P.M., a vocational evaluation was conducted telephonically with Mrs. Cynthia Villines. The vocational evaluation lasted for approximately 1.5 hours. There are limitations on her ability to travel and this was the only method of evaluation given the time frame. A vocational diagnostic interview was conducted. This expert and evaluator asked many open ended questions. First, she gave a synopsis of the nature of her disability from the time of the accident through her medical treatment, surgery, therapy, and finally into the present time period. Her education, work related skills, work history, and activities of daily living were evaluated.

She did discuss the challenges she faced with Kroger in regard to being forced into physical therapy with persistent threats of being terminated as she was in unbearable pain. She indicated that because of physical therapy being forced on her before the MRI. Her MRI indicated need of surgery. It is her understanding that her left knee and leg impairment is now permanent for the remaining years of her life. Currently, she likely requires additional medical care while she indicates lack of medical resources to visit a private family Physician.

It was evident while speaking with Mrs. Villines that she was a very hard worker. While she was employed with Subway on some days, she would work 12-14 hours shifts prior to her injury.

We did take a five minute break about one third into the vocational diagnostic interview. In summary, she had demonstrated a professional demeanor, polite, respectful, and cooperative throughout the evaluation. Mrs. Villines did state that she is unable to work currently.

8

## 13. WORK HISTORY

| | |
|---|---|
| **EMPLOYER:** | Subway (2005-2010) |
| **JOB TITLE:** | Fast Food Manager/Assistant Manager, and fast food worker |
| **DOT #:** | 185.137-010 (fast foods manager) |
| **ONET#:** | 11-9051.00 (fast foods manager) |
| **SVP:** | 5 (skilled) |
| **Physical Exertion Level:** | Light |
| **RML:** | GED levels, 444, Reasoning, Math, and Language |
| **Notes:** | She worked 2009 to 2010 for 13 months as a manager while working 1-2 years as an assistant manager. There is not a DOT/ONET for assistant manager. She indicated being a general manager for the 13 months while be responsible for all store operations.  She reported at this time earning approximately $23,000.00 annually. |

9

| EMPLOYER: | Kroger |
|---|---|
| JOB TITLE: | Delicatessen Counter Worker |
| DOT #: | 317-664-010 |
| ONET#: | 35-2021.00 |
| SVP: | 2 (unskilled) |
| Physical Exertion Level: | Medium |
|  |  |
| Notes: | Began earning $9.50/hourly and received a $.10 raise |

| EMPLOYER: | McDonalds/Wendy's |
|---|---|
| JOB TITLE: | Fast Food Worker |
| DOT #: | 311.472-010 |
| ONET#: | 35-3021.00 |
| SVP: | 2 (unskilled) |
| Physical Exertion Level: | Light |
| | |
| Notes: | Employment between years of 2005-2006, obtained from review of personnel records. She was always willing to take some type of job to remain employed because she is a hard worker. |

After reviewing her personnel file from Kroger that documented her previous employment and this evaluator's analysis of her previous employers, she has never been terminated from employment prior to being employed at Kroger. She voluntarily left some jobs but was never terminated per my understanding. She is a very good worker who demonstrates an excellent work ethic.

11

## 14. PRE-INJURY EARNINGHS ANALYSIS, ANALYSIS OF PAST WORK EXPERIENCE:

| Job Title | DOT # | Proxy Wages: |
|---|---|---|
| Delicatessen Center Worker Medium, unskilled | 317-664-010 | $18,620.00 |
| Cashier-Checker Light, semi-skilled | 211.462-014 | $18,560.00 |
| Manager, fast food services, Light Skilled | 185.137-010 | $43,230.00 |

*Based on US Department of Labor Bureau of Labor Statistics 2013. This is current wages and not her past wages. If she would become a manager of fast food services today, then the median earnings is approximately $43,230.00 annually. The Dallas-Fort Worth, TX region was utilized for these findings. She resides within Johnson County.

In summary, Mrs. Villines's past work is light to medium, unskilled and skilled per the Dictionary of Occupational Titles 4th edition. The work would require her to have a good level of customer service skills while being able to resolve customer problems. She does have basic managerial skills from her work as a fast food manager at Subway. The fast food manager is a lower SVP level than other types of industry managers. The amount of vocational preparation is one to two years total which can be gained from previous customer service experience.

Currently, she cannot perform her past work.

## 15. PHYSICAL COMPLAINTS

There are complaints of pain throughout the medical records that I reviewed. Mrs. Villines indicated during her vocational evaluation that her pain level is currently an eight from a one to ten scale with a one being the lowest and ten being emergency room level pain. Based on my professional experience, pain tolerances are somewhat subjective and based on the individual. Mrs. Villines is also plagued with insomnia. In summary, she is in a significant amount of physical pain that she cannot enjoy relief.

## 16. ADL's ACTIVITIES OF DAILY LIVING

*Standing* –   Mrs. Villines indicates only being able to stand for 30 minutes approximately.

*Squatting* –   Mrs. Villines indicates she cannot squat because being in too much pain.

*Bending* –   Mrs. Villines indicates trouble bending and it causes pain.

*Sitting* –   No limitations with sitting but occasional needs to elevate her leg by propping it up on another stool or chair. However, transferring from a sit to standing position and back to a seated position is very difficult for her.

*Ambulation* -  She must take a break that requires sitting down approximately every fifteen minutes

12

while walking.

*Bathing –*     Mrs. Villines indicates that she can no longer enjoy baths since her injury. She must take quick showers while standing.

*Sleep –*     Mrs. Villines indicates that she suffers from insomnia post injury. She used to be able to sleep six to eight hours per night and now can only sleep about 3 hours per night.

*Cane use-*     Mrs. Villines uses cane for appointments outside of her home but it has not been prescribed.

*Cleaning –*     Mrs. Villines has trouble cleaning the house, before injury her house was immaculate and now it is not clean and somewhat run down. She explained that in the past receiving help from family.

*Stairs –*     She indicates needing to avoid climbing all stairs.

*Dressing –*     She used to wear jeans and she cannot stand the material anymore against her skin since knee injury.

*Yard work –*     She performs yard work because she is able to sit on a riding lawn mower.

*Shopping –*     She indicates being able to shop but needing to take breaks by sitting down between shopping. The shopping cart is helpful for her to lean her body onto while taking the pressure off of her left leg. This activity takes her much longer.

*Cooking –*     She indicates being able to cook.

*Laundry –*     The way she does laundry has changed, it takes her longer because she can only manage smaller loads.

*Toileting -*     She indicates that it hurts to squat. She has significant difficulty using a public restroom even with use of handicapped accessible railings. She avoids public restrooms. While at home she explained that the bathroom at her residence is small and she braces her body bi-laterraly raising her arms and hands to push against the wall in order to stabilize her body while sitting down and standing up from the toilet.

## 17. MEDICAL TREATMENT

She reports lack of medical treatment and resources to medical care.

## 18. TRANSFERABLE SKILLS ANALYSIS

Transfer of skills involves an assessment of skills that a person used on one job which can be interchanged or substituted into another job to be used to determine the employability of the person. Skills are learned by doing tasks. In the context of Social Security as an example, skills are defined as the assessment of work functions acquired from performance of skilled or semi-skilled jobs which can be applied to meet the requirements of other skilled or semi-skilled jobs.

The U.S. Federal government states (20 CFR 404.1568 (d) "Skills that can be used in other work (transferability)...(1) We consider you to have skills that can be used in other jobs, when skilled or semiskilled activities you did in the past work can be used to meet the requirements

of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs. (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs which (i) The same of lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved."

This process is based on a synthesis of information from an evaluee's background history including medical, psychological, educational, social and vocational information. Using acquired skills has been proven to be most cost-effective means of returning an injured worker back to gainful employment. Transferability of Skills Analysis (TSA) is the foundation to identify similar or related jobs that are consistent with or equal to worker's capabilities and functional restrictions. The seven step process of Transferability of Skills Analysis involves identifying jobs in a person's work history, Select and occupational code with the title (using DOT or O*ONET), Profile the jobs, create an unadjusted vocational profile, create the residual functional capacity profile, finding related or similar jobs, and locating jobs in the local labor market.

Mrs. Villines's work history was analyzed using the Vocational Diagnosis and Assessment of Residual Employability (VDARE) process which is an organized or systematic way to assess transferable work skills and vocational potential for work. The analysis takes into consideration physical demands, working conditions, general educational development, specific vocational preparation, aptitudes, work activities, and work situations. Factors of the search conducted are based on Occupational Group Arrangement (OGA), Data People and Things (DPT), Guide of Occupational Exploration (GOE), Work Field (MTEWA), Specific Vocational Preparation (SVP) and DOT industry.

Transferability of skills was performed to determine which occupations in the labor market he could perform within the vocational capability.

Based on this analysis, Mrs. Villines does possess transferable skills from the occupation of Fast Food Manager to professions that include: telephone solicitor and receptionist because of her people oriented and customer service skills.

However, given the review of her activities of daily living, she does have a disability and will likely be unable to sustain employment because of her medical condition.

## 19. ASSISTIVE TECHNOLOGY

Assistive Technology or Rehabilitation Technology increases the ability and work choices available to a person with impairment. Assistive Technology is defined by the Technology-Related Assistance for Individuals with Disabilities Act of 1994 (PL 103-218) is "any item piece of equipment or production system whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve the functional capacities of individuals with disabilities."

In some cases, Assistive Technology is used to create options which otherwise might not be available.

In this case, Assistive Technology will not be beneficial to Mrs. Villines.

## 20. VOCATIONAL CONCLUSTIONS

- Based on Mrs. Villines Pre-injury and Post-Injury vocational profile, she will experience wage loss.

- There is likely at least a period of time where she 100% disabled for several years where she was not employable at all.

- Mrs. Villines can possibly perform some sedentary work but it is likely she will be unable to meet productivity requirements to sustain work.

- Because she will be unable to perform light, medium, heavy, and very heavy work, the labor market access method, indicates the occupational base is severely eroded. Consequently, she will face a significant lifetime disability percentage.

- The labor market of Joshua, TX will limit Mrs. Villines even further in regard to the labor market.

## 21. RESIDUAL EARNING CAPACITY

The functional limitations imposed by Mrs. Villines's injuries are the major determinants of the opportunities or lack thereof, available to her for vocational alternatives.

Functional limitations may affect an individual's job and earnings potential in one or more ways.

1. The limitation may limit mobility and make it difficult for the individual to get to and from the job site.

2. The limitations may interact with the work environment in such a way as to make performance difficulty, uncomfortable, or dangerous.

3. The limitations may make it impossible, or at least difficult, to perform certain necessary job tasks.

4. The limitations may make it impossible, or at least difficult, to perform job tasks at a competitive rate, which is the level of production acceptable to an employer.

5. There may be increase danger or risk to oneself because of her physical limitations and the difficulty of performing certain functions.

6. The limitations may affect the work safety of co-workers or the public.

7. The limitations may impair one's competitive ability that could impede normal progress up the "organizational ladder" or the chance of getting a job in the open labor market.

These elements do not exist in every case. In some cases, there may be other factors that would hinder job performance or labor market competitiveness. To the extent they are present, however, the elements will generally affect the individuals' ability to obtain and retain employment, may affect the types of jobs potentially available, or may affect future raises, promotions, and/or job mobility.

## 22. PROFESSIONAL VOCATIONAL OPINIONS EMPLOYABILITY OPINION

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines is an individual with a disability and she falls under the American Disability Act. She was terminated from employment post critical injury. Her Activities of Daily Living are impacted directly from her left knee and leg injury. These limitations are objectively documented in the Activities of Daily Living section of this report and review of medical documentation. Her Activities of Daily Living are significantly affected post injury.

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines was 100% disabled for the several years post injury while she was undergoing medical treatment, surgery, and therapy. Based on this scenario for a period of time she will have 100% wage loss.

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines currently does have a severe vocational impairment that would impact her level of employability. This is based on industry standards and methodology by reviewing all documents that include medical information. Additionally, this is based on this evaluator's vocational evaluation on Mrs. Villines.

- It is my professional opinion that by analyzing Mrs. Villines's Proxy wages from pre-injury to post-injury that she does have post-injury earning loss. Proxy wages is a figure that can be used to represent the value of something in calculation. Given a degree of scientific certainty when analyzing the U.S. Department of Labor statistics her proxy wages are based on the job titles delicatessen counter worker/bakery worker, and manager, fast food services. The average wage (mean) based on a forty hour work week is between $18,620.00/annually to $43,230.00/annually. This is based on the U.S. Department of Labor Bureau of Labor Statistics (2013) for the pre-injury job titles in the Dallas, Fort Worth vicinity of Texas. Her post injury wage loss falls within the range of these two figures. This is analyzing the period of time from her date of work related injury until the date the vocational evaluation was conducted. Findings are approximate in regard to duration of time while being 100% disabled with total loss of earnings.

- Given a reasonable degree of scientific certainty, it is my professional opinion that from the date of this expert's vocational evaluation of Mrs. Villines on May 30, 2014, her post injury wage loss is between 70% and 90% of her proxy wages of fast food manager at $43,230.00/annually since this has been the job that was her highest skill level that lasted over one year in duration. This will be lifetime earnings loss given her full retirement age of sixty-seven years old. There are approximately sixteen years of additional working years remaining. The labor market access method was also utilized for the wage loss percentage. It is safe to say that there will be several hundred thousand dollars of lost wages. Based on the United States Department of Labor Bureau of Labor statistics, the occupation of fast food manager is in demand and expected to grow. Because of Mrs. Villines physical limitations she will be unable to perform this type of work. She will be required to stand and walk for most of the day. This is based on the United States Department of Labor Dictionary of Occupational Titles 4th edition and the government resource website ONET.

- It is my professional opinion that given a reasonable degree of scientific certainty, Mrs. Villine's future wage loss will be between $13,034.00 to $16,758.00 annually on the low end and (based on 70%-90% of $18,620.00 lower earnings threshold); that equals $208,544.00 to $268,128.00 annually by multiplying sixteen years into the future. The higher end of wages based on fast food manager of $43,230.00/annually is $30,261.00 to $38,907.00 annually on the high end.

This is calculated by 70%-90% disability for the remaining of her working life is n $484,176.00 to $622,517.00 by multiplying sixteen years into the future.  The median number between the low and high end is $415,530.00. Additionally at least two years of earnings loss from her last job should considered to add to these figures in the amount of $33,720.00 (based on wage of $18,620.00 times two years of earnings). This raises the minimum figure to $242,264.00. As mentioned in the above bulleted professional opinion it is within reasonable scientific certainty to base her lifetime earnings loss on proxy wages of $43,230.00 or the higher figure. Calculation of sixteen years is based on age and including the entire sixty-seventh year. Since these numbers are based on a vocational expert calculation and not an economist or accountant, these numbers do not consider present value calculations that take into consideration inflation rates, consumer price index, and bond or investment rates.

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines may have more significant medical findings from her left knee and leg injury but she is unable to obtain medical treatment necessary to address her issues. She indicates that there might be a finding of RSD, Reflex, Sympathetic, Dystrophy Syndrome, resulting from her injury.

- Given a reasonable degree of scientific certainty, it my professional opinion that the current gap in her employment record because of being unemployed, her post injury wages combined with her physical limitations, being in her fifth decade of life, she will encounter difficulty obtaining employment in a job search because of these reasons. This is based on my professional experience. She does not have any college background and the unemployment rate is significantly higher for non-college graduates. This will add to her future difficulty in obtaining employment. According to the United States Bureau of Labor Statistics, unemployment rate for the overall population is 7.6% approximately while unemployment rate for those with advanced degree is 3.8% approximately (May 2013). In summary, she is at a disadvantage.

- Given a reasonable degree of scientific certainty, it my professional opinion that Mrs. Villines does have limited labor market access given that she resides in a smaller city of Joshua, TX (population of 6,000 people approximately per 2010 United States Census).

Note: This vocational expert reserves the right to keep this report open if further vocational analysis on Mrs. Villines is deemed necessary.

I swear under penalty of perjury that the information contained in this report is correct to the best of my ability.


**REPORT SUBMITTED:**

Vocational Solutions, LLC
Jeffrey T. Kiel, M.Ed., CRC, CVE, CCM, CEAS, ABVE/D
Partner/Director of Vocational Rehabilitation Counseling
Board Certified Vocational Expert
Date Submitted: June 10, 2014 & revision June 19, 2014

# Appendix A

## CURRICULUM VITAE

**VOCATIONAL SOLUTIONS, LLC www.expertwitnessovcational.com**
**11703 Huebner Road vocexpertkiel@vocsolutions.net**
**Ste # 106-458 (210) 852-5837 (ph.)**
**San Antonio, TX 78230 (210) 369-9566 (fax.)**

---

### JEFFREY T. KIEL
### BOARD CERTIFIED VOCATIONAL EXPERT

**CERTIFICATIONS/CREDENTIALS**

**ABVE/D,** Diplomate, American Board of Vocational Experts, Board Certified: #00270, current.

**CRC,** Certified Rehabilitation Counselor by the Commission on Rehabilitation Counselor Certification, current. Certification #: 00055591.

**CVE,** Certified Vocational Evaluator by the Commission on Vocational Evaluators and Work Adjustment Counselors. Currently under CRCC oversight, current.

**CCM,** Certified Case Manager by the Commission on Certified Case Managers, current.

**CEAS,** Certified Ergonomic Assessment Specialist, Back School of Atlanta, current.

**CRP,** Certified Community Rehabilitation Professional Director, through University of North Texas, current.

**PROFESSIONAL EXPERIENCE**

**Vocational Rehabilitation Counselor/Executive Director - Vocational Expert** *2004-Present*
*Vocational Solutions, LLC,* San Antonio, TX

- Evaluate the vocational potential, employability and earning capacity of able-bodied and persons' with disabilities through interviewing, record reviews, job analysis, and vocational testing to determine the individual's ability to perform competitive employment. Hired and managed employees. Calculate pre-injury and post-injury current and future earnings.
- Conduct vocational evaluations that include diagnostic vocational interview, achievement, abilities, intelligence, work samples, and career interest and values assessments. Completed 750 evaluations.
- Utilize transferability skills analysis (TSA) to determine injured persons' skills and conduct Labor Market Research Studies (LMS) to determine job availability.
- Approved vendor to the Texas Department of Assistive and Rehabilitation Services (DARS) to evaluate and place individuals' with disabilities in competitive and supported employment services positions. Conduct vocational rehabilitation counseling. Job base including oil and gas industry.
- Testimony in Personal Injury, Matrimonial, and Workers Compensation Cases.
- Written and/or verbal testimony accepted in State & District Courts in TX, CA, and OH.

**Vocational Rehabilitation Counselor – Vocational Expert** *2004-Present*
*Office of Disability Adjudication, And Review,* Texas and multi-state testimony.

- Evaluate the vocational potential and employability of able bodies and individuals with disabilities seeking Social Security Disability Cases using TSA and LMS. Testimony is based on Department of Labor (DOT) characteristics and hypothetical physical and non-exertion limitations.
- Testified in over 4,500 Social Security Disability cases.

**Vocational Rehabilitation Counselor – Vocational Expert** *2002-2005*
*Genex Services (Unum Provident),* San Antonio, TX, and *Parman Group,* Columbus, Ohio

- Interviewed, conducted record reviews, vocational testing, and Transferability Skills Analysis (TSA) to determine the individual's ability to perform competitive employment.
- Provide vocational rehabilitation counseling services such as case management, job analysis and job placement services to injured workers and Veterans. Specialized in evaluating oil and gas workers. Prepared vocational analysis forensic analysis reports for Long Term Disability cases for insurance defense.

18

- Provided Vocational Testimony in Texas Workers Compensation Cases, Defense.

**EDUCATION**

**M. Ed.**, Masters of Education, Human Resource Development, Educational Technology University of Toledo 2000.

**B.A.**, Psychology/Minor Business Administration, University of Toledo, 1998.

**Post Graduate** –One year towards M.S., Rehabilitation Counseling, Kent State University 2001.

**Post Graduate** - Certified Ergonomic Specialist, Back School of Atlanta

**Post Graduate** – University of Florida, enrolled, Life Care Planning, 2013-current

**INTERNSHIPS/PRACTICUM:**

Vocational Guidance Services, *Work Evaluator II*, (2001-2002): Clinical hours and full-time employment in vocational evaluation and situational assessment. Cleveland, OH.

Cerebral Palsy Foundation: *Clinical Intern*, Supervised by a clinical social worker and a Certified Rehabilitation Counselor, 2001, Cleveland, OH.

Work Force Investment Act: Developing training and development benchmarks for Lucas County and conducted an evaluation of job satisfaction for a Corporation, 1998-2000, Toledo, Ohio.

**PROFESSIONAL MEMBERSHIP/FACULTY POSITIONS/HONORS:**

2013, SHRM: Society for Human Resource Management, Member.

2013, Volunteer, Wounded Warrior Program through VA: San Antonio, TX. 2011, 2013 - Faculty, Wayne Wright law firm, CLE Texas BAR provider.

2011-Present, ABVE Diplomate member, American Board of Vocational Experts. Serve on Peer Review and conference planning committees.

2005-Present, Faculty, Job Coaching, Interviewing Coaching DARS program.

2006-2011, 2013, IARP, International Association of Rehabilitation Professionals, Forensics Division, Serve as a regional correspondent on membership committee.

2005-2006, SARRA, San Antonio Regional Rehabilitation Association, one year as a Board member. Planning CLE events and community fundraising for individuals with disabilities.

2006-present, Texas Rehabilitation directory of private providers.

2002-2004, NRA, National Rehabilitation Association.

2002-2003, Faculty, Veteran's Administration Vocational Rehabilitation program. Job Club moderator and facilitator.

2003- Faculty, Axia Community College, Cultural Diversity Adjunct Instructor.

**PUBLICATION/PROFESSIONAL PRSENTATION:**

Changing Tides: An Empirical Review of Vocational Expert Testimony in Social Security Disability Appeals Hearings, Kiel, Jeffrey T. Copyright @ 2013, presented to Wayne Wright Law Firm.

Rising to the Challenge: Social Security Vocational Expert Testimony Regarding Claimants' Limitations and Transferability, Kiel, Jeffrey T. Copyright @2011, presented to Wayne Wright Law Firm.

19

## VOCATIONAL WORK CONSULTED (Appendix B)

1. Dictionary of Occupational Title, Fourth Edition-Revised, U.S. Department of Labor, Employment and Training Administration/JIST Works, Inc., 1991.
2. O*NET (occupational Information Network) On Line http://online.onetonline.org
3. Job Browser Pro, Version 1.6.6 Skilltran, Spokane, WA., 2012.
4. Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, U.S. Department of Labor, Employment and Training Administration, 1993.
5. The Guide for Occupational Exploration, 2000 Edition, Farr, Ludden & Shatkin, Published by JIST Works Inc., 2000.
6. The Transitional Classification of Jobs, 6th Edition, J.E. and T.F. Field, Elliott & Fitzpatrick, Inc., 2004.
7. The Revised Handbook for Analyzing Jobs, U.S. Department Of Labor, Employment and Training Administration/JIST Works, Inc., 1991.
8. Occupational Outlook Handbook, 2011-2012 Edition, http://www.bls.gov/ooh
9. Occupational Employment Statistics, May 2011 Metropolitan and Non Metropolitan Area Occupational Employment and Wage Estimates Edinberg and McAllen, TX. http://stats.bls.gov/oes/current
10. The Vocational Expert, Revised and Updated (2005), Blackwell, Terry L. Field, Timothy F et.al Jenkins. William M, Anderson Robert M, Dietrich Wilson, L., Elliott & Fitzgerald, Inc, Athens, Georgia 2005.
11. WRAT-4, Wide Range Achievement Test, Wilkinson, Gary S. Ph.D., Robertson, Gary, J. Ph.D., Psychological Assessment Resources, Inc., 2006.
12. Forensic Casebook, Vocational and Economic Reports, The Carib Group, Elliott & Fitzpatrick, Inc., 1998.
13. Owings, Emma, J.D., Owings, Stan, M.S., A Rehabilitation Counselor's Practical and Historical Guide to Earning Capacity Assessment, Elliott and Fitzpatrick, Inc, 2007.
14. Vocational Assessment: Evaluating Employment Potential 4th edition, Havranek, Ed.D, J., Field, Ph.D., T., Grimes, J.W., Ph.D., 2005.
15. U.S. Bureau of Labor Statistics, www.bls.gov
16. Scientific vs. Non-Scientific and Related Issues and Admissibility of Testimony by Rehabilitation Consultants, Field, F. Timothy, Ph.D., Stein, David, Ph.D., Elliott & Fitzpatrick, Inc., Athens, Georgia (2002).
17. American Disability Act, www.ada.gov (2014).

# GLOSSARY OF TERMS (Appendix C)

**Aptitude** - The specific capacities or abilities required of an individual in order to facilitate the learning of or carrying out of some task or job duty.

**Disability** - Any physical, mental, or emotional condition that is chronic or long-lasting, which is severe enough to limit the individuals' functioning and which results in a handicap to productive activity.

**Earning Loss** - The individual's expected loss of earnings, if any, which results from the injury. Loss of earnings, if any, which results from the injury. Loss of earnings is based on history whereas loss of earning capacity is projected into the future.

**Employability** - Exists if a person possesses skills, abilities, and traits necessary to perform a job: the kinds and types of jobs which a person with a disability might be able to perform.

**Essential Functions** - (An Americans with Disabilities Act and 1973 Rehab. Act term) fundamental job duties of the employment position the individual with a disability holds or desires.

**Exertional Level** - Physical abilities, mental, and emotional disabilities which adversely affects the workers capacity to function at a job.

**Handicap** - The effect of the disability on the ability to perform gainful work.

**Illiteracy** - Inability to read or write: generally little or no formal education.

**Job Description** - Narrative description of activities and requirements of a job; does not necessarily accurately reflect what a worker will actually do in that job.

**Limited Education** - Some ability in reasoning, arithmetic, and language skills, but not enough to perform semi-skilled or skilled job: generally the 7th to 11th grades according to definition by the Social Security Administration.

**Labor Market Access (LMA)** - A method for determining the employability and loss of access to the labor market of an individual with a disability. Utilizes the vocational diagnosis and assessment of Residual Employability process (VDARE) to determine residual functional capacity.

**Loss of Access** - Generally related to the loss of access to the labor market. Persons with injuries may suffer a reduction in the numbers of jobs which are available to them as a result of reduced work life expectancy (such as earlier retirement, or part-time rather than full time work) or due to functional limitations which prevent the client from choosing certain occupations.

**Marginal Education** - Ability in reasoning, arithmetic, and language skills sufficient to perform simple, unskilled types of jobs; generally, 6th grade & below.

**Mobility Limitations** - Function of getting from one place to another is limited; may be caused either by physical disability or environment barriers.

**Non-Exertional Impairment** - Does not limit physical exertion and does not directly affect ability to sit, stand, walk, lift, carry, push, or pull; does have impact on ability to work.

**Pain Limitation** - Pain refers to an unpleasant sensation characterized by throbbing, aching, shooting, or other unpleasant feelings associated with bodily injury or disorder. When pain is continuing, unremitting, uncontrollable, and severe, it may constitute a severe functional limitation to normal living.

**Partial Disability** - Exists if the individual cannot perform some or all of the work for which he or she was fitted prior to injury.

**Physical Demands** - The physical requirements made on the worker by the specific job worker situation.

**Place-ability - Economic** conditions and employer attitudes are such that a person can actually be placed in a job, the difficulty in placing a person with disability in a job.

**Residual Functional Capacity** - A disabled person's remaining physical and mental work potential and capacity.

**Skill Level** - Level of knowledge of work activity and degree of judgment required to perform a certain

job; includes unskilled, semi-skilled, and skilled.

**Temperament** - Personal traits consisting of the individual's characteristic mode or inclination of emotional response.

**Total Disability** - Exists if the individual is unable to return to pre-injury employment and unable (due to an injury) to obtain employment with similar livelihood.

**Transferability of Skills** - Skills that were used in one job can be interchanged or substituted into another job; used to determine the employability of a person.

**VDARE Process** - (Vocational Diagnosis and Assessment of Residual Employability) uses client's work history as a basis upon which to build an assessment of client vocational functioning capabilities.

**Vocational Assessment** - Process by which vocational expert determines loss of vocational functioning due to a disability and helps clients to correlate their characteristics as workers with the characteristics of occupations.

**Vocational Rehabilitation Services** - Services designed to enable a handicapped person to secure and retain employment.

**Wage Loss Analysis** - A procedure which addresses the amount of wage lost to a worker as a result of an injury.

**Work Tolerance** - Ability to sustain a work effort for a prolonged period time, ability to maintain a steady flow of production at an acceptable pace and acceptable level of quality, ability to handle a certain amount of pressure.

**Worker Trait** - The requirement made of the worker in terms of aptitudes, general educational development, vocational preparation, physical demands, and personal traits.

---

**Resources: Vocational Evaluation and Work Adjustment Standards With Interpretive Guidelines and VEWAA Glossary, Copyright, 1977. All rights reserved by the vocational evaluation and work adjustment association.**

**Attachment D**

Beall & Biehler, Attorney Josh Harris, Esq., Albuquerque, NM – Defense Personal Injury, Oil and Gas
Tommy Joe Jensen et al v. LRE Operating Et al, and Lime Rock Resources A, L.P.
Cause #: D-101-CV-2012-01285
Santa Fe County, 1st Judicial District

Daughty, Alcaraz & deGraaw, Alburquerque NM – Defense Personal Injury, contract self-employment case
Juarez et al v. McCarthy Building Companies
Cause #: D-0101-CV-2013-00273
Santa Fe County, 1st Judicial District

Attorney Michael J. Cisneros: McAllen, TX – Plaintiff Personal Injury
Cause #: C-3287-11-J, In the 430th Judicial District Court of Hildalgo County, TX
Jose Villarreal Jr. Vs. JNAA Enterprises, LLC & Sam Popovich

Gene Toscano, Inc.: SanAntonio, TX – Plaintiff Personal Injury, Traumatic Brain Injury, testified trial by Jury
Cause # 2011-CI-11485 Kathryn E. Dillard U.S. Abraham Garza Sierra et al, in the 225th Judicial Court
Bexar County, TX

Gene Toscano, Inc., San Antonio, TX – Plaintiff Personal Injury
Cause # 2013-CI-10505, J Carmen Sandoval vs. Ricardo Tarango & ARI Fleet LT LSR In the 131st Judicial Court District
Bexar County, TX.

Attorney Lori Serratelli, Serratelli, Schiffman & Brown, PC – Family Dissolution
Dickerson vs. Dickerson, Pennsylvania, Common Pleas of Cumberland County, PA.
Case No. 043112233 99 S 2011

Attorney Jeffrey Nunnarri, Toledo, OH – Family Dissolution
Case No, 2013-DR-0146, Mandy Buckland Meyercord V. Robert Meyercord, in the Court of Common Please Hancock
County, OH.

Cole, Fisher, Bosquez-Flores, Cole, and O'Keefe, Fresno, California – CA Worker's Compensation
Cause #ADJ841052, Maria Isabel Servin De Leon (Leticia Castel vs. Grover Gonzalez and state compensation Insurance
Fund)

The Law Office of Kenneth Nollen Bethune, Oklahoma City, OK – Federal ADA
Brent Rhodes V. Southern Nazarene University
Cause # CIV-11-71-F

Winner & Carson P.C., Las Vegas, Nevada – Plaintiff Personal Injury
Angel Fisher vs. Bellagio Casino-Hotel: Bellagio LLC:
Eight Judicial District Court
Cause #A-10-632371-C
Note: I partnered with a second vocational expert. I conducted the vocational evaluation.

Gonzales Palacios, LLP, McAllen, TX – Plaintiff Personal Injury
Cause No. C-311-08-C Jorrge Avilla, SR and Dianiva, Individually and as Next Friends of Jorge Avila, Jr. V. Rafael Svilla
& RGV Pizza Hut LLC, d/b/a Pizza Hut of McAllen et al: In the 139th Judicial District Court of Hidalgo County, TX

Modjarad & Abusaad Law Firm, Dallas, TX – Plaintiff Personal Injury
Victor Sandoval V. The Estate of Mohammad Rage, On Time Express Logistics L.L.C., Summit Contracting, LTD, AND
Anderson Columbia Co, Inc.
81 St LASalle County District Court
Cause #: 12-04-000479-CV

Additionally, I testified in over 4,500 SSI/SSDI administrative hearings as a vocational expert through the Office of
Disability, Adjudication, and Review as of June 10, 2014

23

# EXHIBIT B

Exhibit B

# TABLE OF CONTENTS

1. EMPLOYABILITY AND REPORT INFO................................................................2

2. CONFIDENTIALITY ISSUES...........................................................................3

3. PURPOSE OF REFERRAL...............................................................................3

4. REFERRAL QUESTIONS.................................................................................4

5. VOCATIONAL EVALUATION METHODOLOGY.................................................4

6. VOCATIONAL EALUATION ASSUMPTIONS....................................................6

7. COMPETITIVE EMPLOYMENT EVALUATION..................................................6

8. FORMULATION OF OPINIONS........................................................................7

9. RECORDS REVIEW.......................................................................................7

10. PRE-EXISTING MEDICAL CONDITIONS........................................................8

11. VOCATIONAL DIAGNOSTIC INTERVIEW......................................................8

12. EDUCATIONAL AND TRAINING BACKGROUND............................................9

13. WORK HISTORY..........................................................................................9

14. ANALYSIS OF PAST WORK/PRE-INJURY EARNINGS ANALSIS......................11

15. PHYSICAL COMPLAINTS...........................................................................12

16. ACTIVITIES OF DAILY LIVING....................................................................12

17. MEDICAL TREATMENT..............................................................................13

18. TRANSFERABLE SKILLS ANALYSIS...........................................................14

19. ASSISTIVE TECHNOLOGY.........................................................................14

20. VOCATIONAL CONCLUSIONS.....................................................................15

21. RESIDUAL EARNING CAPACITY.................................................................15

22. PROFESSIONAL OPINIONS........................................................................16

    APPENDIX A, CV.......................................................................................18

    APPENDIX B, WORK
    CITED.......................................................................................................20

    APPENDIX C, GLOSSARY ..........................................................................21

    APPENDIX D, Recent Case Summary............................................................23

# Vocational Solutions, LLC

11703 Huebner Rd Ste #106-458 San Antonio, TX 78230

Phone: 210-852-5837          Fax: 210-369-9566

**Jeffrey T. Kiel M.Ed., CRC, CVE, CCM, CEAS, ABVE/D**
Partner, Director of Vocational Rehabilitation Counseling

Diplomate, American Board of Vocational Experts

Board Certified Vocational Expert

Certified Rehabilitation Counselor

Certified Case Manager

Certified Ergonomic Assessment Specialist

## VOCATIONAL ANALYSIS, EARNINGS CAPACITY AND EMPLOYABILITY REPORT

| | |
|---|---|
| **EVALUEE:** | Cynthia Villines, Plaintiff |
| **CLAIMANT'S AGE:** | 51 |
| **DATE OF BIRTH:** | July 25, 1962 |
| **CASE:** | Cynthia Villines v. Kroger Texas, L.P. |
| **FIRM:** | Modjarrad & Abusaad law firm |
| **ATTORNEY:** | Julie Wolf, Esq. |
| **DATE OF INJURY:** | June 21, 2011 |
| **CAUSE No.:** | 4:13-CV-304-A |

## EMPLOYABILITY AND EARNING CAPACITY EVALUATION

Mrs. Cynthia Villines is the Plaintiff referred for an employability and earning capacity evaluation by the Law firm of Modjarrad & Abusaad. This report includes findings of Mrs. Villines' employability, an assessment of any transferable skills learned from past occupations, earnings capacity, labor market analysis, and residual functional limitations that involve any impairment when comparing pre-injury to post-injury residual functioning. Mrs. Villines attended a telephonic vocational evaluation on May 30, 2014 at 2:00 P.M. that lasted approximately 1.5 hours.    Information learned from the evaluation is contained in this report in the sections that include Activities of Daily Living, education, and work history.

All work was completed by a Board Certified Vocational Expert

Jeffrey T. Kiel, M.Ed., CRC, CVE, CCM, CEAS, ABVE/D

Diplomate, American Board of Vocational Experts

Board Certified Vocational Expert

## 1 BACKGROUND:

Mrs. Villines is a fifty-one year old female residing in Joshua, TX who endured a work-related injury while working at Kroger. She was employed as a baker/delicatessen worker. On June 21, 2011, she was bringing a baking sheet to the sink and there was a dolly in the middle of the floor that was not supposed to be there. In turn, she tripped over the dolly and the entire weight fell forward and landed on her left knee. Mrs. Villines was in such a degree of pain that she could not get up. It took her approximately ten minutes to gather herself. She immediately reported her injury at her workstation and then was offered to be transported to the hospital but decided to have her husband, David, pick her up instead and then was taken to a clinic in Burlington, Texas. She underwent diagnostic studies that included x-rays and a referral for physical therapy that only intensified her physical condition. About two months later, she finally had a MRI and the diagnostic impressions revealed an ACL tear. Additionally, there was a muscle injury to the lower part of her left leg. Unfortunately, she was dismissed from her job since she could not return-to-work. Apparently, she was unable to obtain the assistance necessary through Worker's Compensation. Mrs. Villines was referred to Dr. McConell, M.D., Board Certified Orthopedic Surgery who scheduled surgery that she underwent on March 5, 2012.

## 2 CONFIDENTIALITY ISSUES

Mrs. Villines was evaluated by the undersigned in compliance with the ethics of a Certified Rehabilitation Counselor and the American Board of Vocational Experts. All documents are kept locked and secured. After case is closed, all documents are kept locked and secured in a location that is under video surveillance. Documents are professionally shredded and destroyed.

## 3. PURPOSE OF REFERRAL

The purpose is to assess the effect of her disabling conditions on her vocational capacity, employability, loss of access to the labor market, and her post-injury residual functional capacity.

Please note that this vocational expert would like to keep this report open to conduct further vocational analysis on Mrs. Villines if necessary. The opinions in this report are formulated and solidified. The specific manner in which Mrs. Villine's vocational disabilities may impede her ability to perform sedentary, light, medium, heavy, and very heavy types of occupations.

The vocational opinions expressed in this report are based on various assumptions made in this report. These opinions were formulated using sound vocational principles for job-person matching and job placement. Objective transferable skills analysis was utilized.

The methodology employed is familiar with competent vocational experts and with the career and rehabilitation theory cited in this report can replicate the findings by applying assumptions, methodology, and supporting analysis.

## 4. REFFERRAL QUESTIONS

The following questions were answered objectively using industry specific scientific methodology contained within this report:

1. What is Mrs. Villines's vocational capacity?

2. Could she return to prior work as a Baker/Deli Worker
   Fast Foods Worker, or Fast Food Manager?

3. Has her prior work provided her with any transferable skills that could be used to perform work requiring less physical capability?

4. What is Mrs. Villine's pre-injury proxy wages?

5. What is Mrs. Villine's post-injury residual earning capacity?

6. What effect have Mrs. Villline's impairments had on her work life?

7. What is the feasibility for Mrs. Villline's to participate in a vocational rehabilitation program?

## 5. VOCATIONAL EVALUATION METHDOLOGY

1. The initial section involves collecting data and facts specific to Mrs. Villine's case by reviewing the medical records and medical restrictions, earning information, and other documents that describe the evaluee's condition. The data provides background information to better understand the evaluee and her medical treatment and to make a determination as to the nature, extent, permanency, and functional limitations of her medical condition.

3. A vocational analysis is performed by Mrs. Villine's past work within a reasonable amount of time. This consists of classifying jobs using standard government codes from the U.S. Department of Labor's Dictionary of Occupational titles (DOT) and O*NET to determine the physical demands, worker functions Specific Vocational Preparation (SVP), skill level, and General Educational Development (GED) of Mrs. Villines's employment. Based on these government publications, information is obtained regarding the skills and competencies, the aptitudes, and job temperaments required for job performance. This helps the vocational expert to determine the evaluee's pre-injury vocational capacity.

4. Based on the information obtained in the review of records, her vocational evaluation and interview, Mrs. Villine's post injury vocational capacity for competitive employment was evaluated.

5. Using the vocational and Assessment of Residual Employability (VDARE) process, a

4

Transferability of Skills Analysis is performed using the Skill Tran and Occubrowse Pro computer programs by aligning past work with work fields, MPSMS, SVP, and physical exertion levels. Mrs. Villines's work history is analyzed to determine her skills, aptitudes, and skill level. Such government publications as the Dictionary of Occupational Titles 4th edition and its supplemental characteristics are used to analyze the skills inherent in Mrs. Villines's past job titles. Mrs. Villines's ability to transfer her skills is learned from previous employment or education other employment. This is within her vocational capacity in the competitive labor market. This involves synthesizing data and information with an emphasis on her ability to return-to-work.

6. Labor Market Access (LMA) analysis was conducted through the development of Mrs. Villines's pre and post injury worker vocational profile made to determine her ability to enter the labor market given her skill level and vocational capacity.

7. A review is made of all of the materials and a vocational expert opinion is formulated as to Mrs. Villines's post-injury vocational capacity, transferable skills, employability, earning capacity, and feasibility of her to receive vocational rehabilitation services.

8. If the individual is found to be employable given the results of her forensic vocational analysis, research is conducted regarding the evaluee's residual earning capacity and the number of such jobs in the local labor market using state and federal government statistics such as OES (Occupational Employment Survey) – State and local OOH (Occupational Outlook Handbook) – National or private labor studies to determine whether jobs exist that Mrs. Villines can perform within the vocational capacity and the current wage for these occupations. This is the standard type of labor market information used and relied upon in the field of Rehabilitation Counseling.

## 6. VOCATIONAL EVALUATION ASSUMPTIONS

The vocational opinions regarding Mrs. Villines's employability, earning capacity, and vocational rehabilitation potential expressed in this report are based on the assumptions that:

1. The records reviewed were complete and accurately reflect Mrs. Villines's physical condition.

2. Mrs. Villines did not intentionally exaggerate or give false information regarding her physical or psychological symptoms.

3. Mrs. Villines's pre-accident vocational functioning is estimated within the average range based on her educational and occupational history.

4. No opinion is reached by this expert as to the causality of Mrs. Villines's medical condition.

5. Since Mrs. Villines' continues to be in pain because of her left leg and knee, her physical limitations are permanent from a vocational perspective.

5

## 7. COMPETITIVE EMPLOYMENT EVALUATION

The purpose of this employability evaluation is to assess the evaluee's ability to perform competitive employment. Competitive employment, as defined in 34 CFR 361.5(b)(10), means work in the competitive labor market that is performed on a full-time or part-time basis in an integrated setting, and for which an individual is compensated at or above the minimum wage but no less than the customary wage and level of benefits paid by the employer for the same or similar work performed for individuals who are not disabled. A job that is set aside for the person with disabilities is not competitive and the employer is looked at as benficent. The person must be able to produce work at a level that is acceptable to an employer. For instance, the employee producing so many small products per hour.

## 8. FORMUATION OF OPINIONS

The vocational opinions expressed in this report are given within a reasonable degree of certainty or probability as a Rehabilitation Counselor and Vocational Expert.

Since Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960), Vocational Experts, who are professions educated, trained, and skilled in job placement and knowledgeable about labor market conditions, have been asked to formulate vocational opinions about specific job opportunities of a person based on their age, education, background, work experience, and medical condition.

The vocational opinions in this report are based on my education, training, experience, and the information contained in various traditional vocational sources (App. B), including private, federal and state government publications. The current knowledge and methods used in the field of forensic vocational rehabilitation were applied in determining Mrs. Villines' employability and earning capacity.

In addition, the opinions are based on the information available to me at the time of my evaluation, including medical and other records, the evaluee's history as obtained from standardized review of records.

If any of the oral or documentary information provided is false, fictitious, fraudulent, incomplete, or misleading, it may change the conclusions and opinions reached in this employability evaluation. The opinions expressed are case specific to this evaluee. Should there be additional information that becomes available at a later time for my review that significantly changes my vocational opinions, I reserve the right to modify and issue a supplemental report.

**9. RECORDS REVIEW**

- Kroger Associate Incident report dated June 21, 2011 Kroger Associate Safety Handbook. This reports indicates, "Tripped on brown cart walking around corner of table in deli department, fell on cart and landed with all weight on left knee, some noticeable swelling". Report indicates "critical injury".
- Photos of Dolly and Accident scene.
- Transcripts of Cytnhia Villines, Deli Clerk position ACT completed courses 9-25-10 to 9-28-10.
- Kroger Occupational Injury Disease Benefit Plan & Summary Plan Description Amended April 8, 2004.
- First Amended Original Complaint.
- Kroger Company of Dallas, Pre-Certification Request, July 27, 2011.
- Kroger Personnel file, during review, identified Performance Appraisal on 9-25-10, states she was meeting expectations.


**The following income records were reviewed:**

- Tax returns: 2009: $18,055.00 gross wages

- Tax return 2010: $16,718 gross wages

- Tax return 2011: $7,711 gross wages

- Schedule C: Profit or Loss from Business (2011): $18,824.00, David W Villines Service and Car Purc: Service (her husband's work).

**Medical Records reviewed**

- Records from Dr. William A. Thomas, D.O. July 9, 2011.

- Office visit August 31, 2011, Dr. Daniel B. Wagner, D.O.: notes describe left knee as crepitus, locking, popping, swelling, and tenderness.
- Physical Therapy notes.
- MRI Left knee, August 8, 2012 P/Marsh, D.O., lists diagnostic impressions
- Prestige Imaging, July, 2011, William A. Thomas, DO.
- Chiropractic Sports Clinic Lists ACL: Compartment Syndrome caused by previous physical therapy.
- Records from Medistat, Dr. Louise Lamarre, M.D., June 21, 2011,
- Baylor Institute for Rehabilitation, Burleston, TX: PT notes, read to Mrs. Villines cancelling physical therapy sessions because of pain: August 26, 2011.
- Texas Worker Compensation Status reports, Sedgwick Claims, showed return-to-work at sedentary June 21, 2011.
- Dr. McConnell, M.D., Continues with pain, pain tolerance problems, July 11, 2012. Lists medications prescribed Narco and Volzaren Gel (NSAID)
- Dr. McConnell, Orthopedic Clinic, PA, April 24, 2012, 7 weeks of post op knee getting painful with physical therapy, steroid injection mutually agreed.
- Arthroscopic surgery, March 5, 2012, by Dr. John McConnell, M.D., Board certified orthopedic

7

surgery. Medical documentations indicates medial, lateral, patellofemoral, supra patellar, anterior, intercondylar tears. Describes technical procedure ACL repair reconstruction.

- Key Health Medical Solutions, November 2013. Read a note that three months post fall, Mrs. Villines' Mom came to her home to assist with house work.

*This summary does not preclude other medical records reviewed.

## 10. PRE-EXISTING MEDICAL FINDINGS (unrelated to accident):

- **None identified.**

## 11. EDUCATIONAL AND TRAINING BACKGROUND

- During the vocational assessment, she reported completing the 9th grade of school while obtaining a GED in approximately 1995-1996.

- She types at 23 words per minute but the speed does not account for typing mistakes. This is based on her self-report.

## 12. VOCATIONAL DIAGNOSTIC INTERVIEW

On Friday May 30, 2014 at 2:00 P.M., a vocational evaluation was conducted telephonically with Mrs. Cynthia Villines. The vocational evaluation lasted for approximately 1.5 hours. There are limitations on her ability to travel and this was the only method of evaluation given the time frame. A vocational diagnostic interview was conducted. This expert and evaluator asked many open ended questions. First, she gave a synopsis of the nature of her disability from the time of the accident through her medical treatment, surgery, therapy, and finally into the present time period. Her education, work related skills, work history, and activities of daily living were evaluated.

She did discuss the challenges she faced with Kroger in regard to being forced into physical therapy with persistent threats of being terminated as she was in unbearable pain. She indicated that because of physical therapy being forced on her before the MRI. Her MRI indicated need of surgery. It is her understanding that her left knee and leg impairment is now permanent for the remaining years of her life. Currently, she likely requires additional medical care while she indicates lack of medical resources to visit a private family Physician.

It was evident while speaking with Mrs. Villines that she was a very hard worker. While she was employed with Subway on some days, she would work 12-14 hours shifts prior to her injury.

We did take a five minute break about one third into the vocational diagnostic interview. In summary, she had demonstrated a professional demeanor, polite, respectful, and cooperative throughout the evaluation. Mrs. Villines did state that she is unable to work currently.

**13. WORK HISTORY**

| | |
|---|---|
| **EMPLOYER:** | Subway (2005-2010) |
| **JOB TITLE:** | Fast Food Manager/Assistant Manager, and fast food worker |
| **DOT #:** | 185.137-010 (fast foods manager) |
| **ONET#:** | 11-9051.00 (fast foods manager) |
| **SVP:** | 5 (skilled) |
| **Physical Exertion Level:** | Light |
| **RML:** | GED levels, 444, Reasoning, Math, and Language |
| **Notes:** | She worked 2009 to 2010 for 13 months as a manager while working 1-2 years as an assistant manager. There is not a DOT/ONET for assistant manager. She indicated being a general manager for the 13 months while be responsible for all store operations.<br><br>She reported at this time earning approximately $23,000.00 annually. |

9

| | |
|---|---|
| **EMPLOYER:** | Kroger |
| **JOB TITLE:** | Delicatessen Counter Worker |
| **DOT #:** | 317-664-010 |
| **ONET#:** | 35-2021.00 |
| **SVP:** | 2 (unskilled) |
| **Physical Exertion Level:** | Medium |
| | |
| **Notes:** | Began earning $9.50/hourly and received a $.10 raise |

10

| | |
|---|---|
| **EMPLOYER:** | McDonalds/Wendy's |
| **JOB TITLE:** | Fast Food Worker |
| **DOT #:** | 311.472-010 |
| **ONET#:** | 35-3021.00 |
| **SVP:** | 2 (unskilled) |
| **Physical Exertion Level:** | Light |
| | |
| **Notes:** | Employment between years of 2005-2006, obtained from review of personnel records. She was always willing to take some type of job to remain employed because she is a hard worker. |

After reviewing her personnel file from Kroger that documented her previous employment and this evaluator's analysis of her previous employers, she has never been terminated from employment prior to being employed at Kroger. She voluntarily left some jobs but was never terminated per my understanding. She is a very good worker who demonstrates an excellent work ethic.

11

**14. PRE-INJURY EARNINGHS ANALYSIS, ANALYSIS OF PAST WORK EXPERIENCE:**

| Job Title | DOT # | Proxy Wages: |
|---|---|---|
| Delicatessen Center Worker Medium, unskilled | 317-664-010 | $18,620.00 |
| Cashier-Checker Light, semi-skilled | 211.462-014 | $18,560.00 |
| Manager, fast food services, Light Skilled | 185.137-010 | $43,230.00 |

*Based on US Department of Labor Bureau of Labor Statistics 2013. This is current wages and not her past wages. If she would become a manager of fast food services today, then the median earnings is approximately $43,230.00 annually. The Dallas-Fort Worth, TX region was utilized for these findings. She resides within Johnson County.

In summary, Mrs. Villines's past work is light to medium, unskilled and skilled per the Dictionary of Occupational Titles 4th edition. The work would require her to have a good level of customer service skills while being able to resolve customer problems. She does have basic managerial skills from her work as a fast food manager at Subway. The fast food manager is a lower SVP level than other types of industry managers. The amount of vocational preparation is one to two years total which can be gained from previous customer service experience.

Currently, she cannot perform her past work.

**15. PHYSICAL COMPLAINTS**

There are complaints of pain throughout the medical records that I reviewed. Mrs. Villines indicated during her vocational evaluation that her pain level is currently an eight from a one to ten scale with a one being the lowest and ten being emergency room level pain. Based on my professional experience, pain tolerances are somewhat subjective and based on the individual. Mrs. Villines is also plagued with insomnia. In summary, she is in a significant amount of physical pain that she cannot enjoy relief.

**16. ADL's ACTIVITIES OF DAILY LIVING**

*Standing –*    Mrs. Villines indicates only being able to stand for 30 minutes approximately.

*Squatting –*    Mrs. Villines indicates she cannot squat because being in too much pain.

*Bending –*    Mrs. Villines indicates trouble bending and it causes pain.

*Sitting –*    No limitations with sitting but occasional needs to elevate her leg by propping it up on another stool or chair. However, transferring from a sit to standing position and back to a seated position is very difficult for her.

*Ambulation -*    She must take a break that requires sitting down approximately every fifteen minutes

12

|              | while walking. |
|--------------|----------------|
| *Bathing* – | Mrs. Villines indicates that she can no longer enjoy baths since her injury. She must take quick showers while standing. |
| *Sleep* – | Mrs. Villines indicates that she suffers from insomnia post injury. She used to be able to sleep six to eight hours per night and now can only sleep about 3 hours per night. |
| *Cane use*- | Mrs. Villines uses cane for appointments outside of her home but it has not been prescribed. |
| *Cleaning* – | Mrs. Villines has trouble cleaning the house, before injury her house was immaculate and now it is not clean and somewhat run down. She explained that in the past receiving help from family. |
| *Stairs* – | She indicates needing to avoid climbing all stairs. |
| *Dressing* – | She used to wear jeans and she cannot stand the material anymore against her skin since knee injury. |
| *Yard work* – | She performs yard work because she is able to sit on a riding lawn mower. |
| *Shopping* – | She indicates being able to shop but needing to take breaks by sitting down between shopping. The shopping cart is helpful for her to lean her body onto while taking the pressure off of her left leg. This activity takes her much longer. |
| *Cooking* – | She indicates being able to cook. |
| *Laundry* – | The way she does laundry has changed, it takes her longer because she can only manage smaller loads. |
| *Toileting* - | She indicates that it hurts to squat. She has significant difficulty using a public restroom even with use of handicapped accessible railings. She avoids public restrooms. While at home she explained that the bathroom at her residence is small and she braces her body bi-laterally raising her arms and hands to push against the wall in order to stabilize her body while sitting down and standing up from the toilet. |

## 17. MEDICAL TREATMENT

She reports lack of medical treatment and resources to medical care.

## 18. TRANSFERABLE SKILLS ANALYSIS

Transfer of skills involves an assessment of skills that a person used on one job which can be interchanged or substituted into another job to be used to determine the employability of the person. Skills are learned by doing tasks. In the context of Social Security as an example, skills are defined as the assessment of work functions acquired from performance of skilled or semi-skilled jobs which can be applied to meet the requirements of other skilled or semi-skilled jobs.

The U.S. Federal government states (20 CFR 404.1568 (d) "Skills that can be used in other work (transferability)…(1) We consider you to have skills that can be used in other jobs, when skilled or semiskilled activities you did in the past work can be used to meet the requirements

13

of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs. (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs which (i) The same of lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes, or services are involved."

This process is based on a synthesis of information from an evaluee's background history including medical, psychological, educational, social and vocational information. Using acquired skills has been proven to be most cost-effective means of returning an injured worker back to gainful employment. Transferability of Skills Analysis (TSA) is the foundation to identify similar or related jobs that are consistent with or equal to worker's capabilities and functional restrictions. The seven step process of Transferability of Skills Analysis involves identifying jobs in a person's work history, Select and occupational code with the title (using DOT or O*ONET), Profile the jobs, create an unadjusted vocational profile, create the residual functional capacity profile, finding related or similar jobs, and locating jobs in the local labor market.

Mrs. Villines's work history was analyzed using the Vocational Diagnosis and Assessment of Residual Employability (VDARE) process which is an organized or systematic way to assess transferable work skills and vocational potential for work. The analysis takes into consideration physical demands, working conditions, general educational development, specific vocational preparation, aptitudes, work activities, and work situations. Factors of the search conducted are based on Occupational Group Arrangement (OGA), Data People and Things (DPT), Guide of Occupational Exploration (GOE), Work Field (MTEWA), Specific Vocational Preparation (SVP) and DOT industry.

Transferability of skills was performed to determine which occupations in the labor market he could perform within the vocational capability.

Based on this analysis, Mrs. Villines does possess transferable skills from the occupation of Fast Food Manager to professions that include: telephone solicitor and receptionist because of her people oriented and customer service skills.

However, given the review of her activities of daily living, she does have a disability and will likely be unable to sustain employment because of her medical condition.

## 19. ASSISTIVE TECHNOLOGY

Assistive Technology or Rehabilitation Technology increases the ability and work choices available to a person with impairment. Assistive Technology is defined by the Technology-Related Assistance for Individuals with Disabilities Act of 1994 (PL 103-218) is "any item piece of equipment or production system whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve the functional capacities of individuals with disabilities."

In some cases, Assistive Technology is used to create options which otherwise might not be available.

In this case, Assistive Technology will not be beneficial to Mrs. Villines.

14

## 20. VOCATIONAL CONCLUSTIONS

- Based on Mrs. Villines Pre-injury and Post-Injury vocational profile, she will experience wage loss.

- There is likely at least a period of time where she 100% disabled for several years where she was not employable at all.

- Mrs. Villines can possibly perform some sedentary work but it is likely she will be unable to meet productivity requirements to sustain work.

- Because she will be unable to perform light, medium, heavy, and very heavy work, the labor market access method, indicates the occupational base is severely eroded. Consequently, she will face a significant lifetime disability percentage.

- The labor market of Joshua, TX will limit Mrs. Villines even further in regard to the labor market.

## 21. RESIDUAL EARNING CAPACITY

The functional limitations imposed by Mrs. Villines's injuries are the major determinants of the opportunities or lack thereof, available to her for vocational alternatives.

Functional limitations may affect an individual's job and earnings potential in one or more ways.

1. The limitation may limit mobility and make it difficult for the individual to get to and from the job site.

2. The limitations may interact with the work environment in such a way as to make performance difficulty, uncomfortable, or dangerous.

3. The limitations may make it impossible, or at least difficult, to perform certain necessary job tasks.

4. The limitations may make it impossible, or at least difficult, to perform job tasks at a competitive rate, which is the level of production acceptable to an employer.

5. There may be increase danger or risk to oneself because of her physical limitations and the difficulty of performing certain functions.

6. The limitations may affect the work safety of co-workers or the public.

7. The limitations may impair one's competitive ability that could impede normal progress up the "organizational ladder" or the chance of getting a job in the open labor market.

These elements do not exist in every case. In some cases, there may be other factors that would hinder job performance or labor market competitiveness. To the extent they are present, however, the elements will generally affect the individuals' ability to obtain and retain employment, may affect the types of jobs potentially available, or may affect future raises, promotions, and/or job mobility.

## 22. PROFESSIONAL VOCATIONAL OPINIONS EMPLOYABILITY OPINION

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines is an individual with a disability and she falls under the American Disability Act. She was terminated from employment post critical injury. Her Activities of Daily Living are impacted directly from her left knee and leg injury. These limitations are objectively documented in the Activities of Daily Living section of this report and review of medical documentation. Her Activities of Daily Living are significantly affected post injury and objectively documented in this report.

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines was 100% disabled for the several years post injury while she was undergoing medical treatment, surgery, and therapy. Based on this scenario for a period of time she will have 100% wage loss.

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines currently does have a severe vocational impairment that would impact her level of employability. This is based on industry standards and methodology by reviewing all documents that include medical information. Additionally, this is based on this evaluator's vocational evaluation on Mrs. Villines.

- It is my professional opinion that by analyzing Mrs. Villines's Proxy wages from pre-injury to post-injury that she does have post-injury earning loss. Proxy wages is a figure that can be used to represent the value of something in calculation. Given a degree of scientific certainty when analyzing the U.S. Department of Labor statistics her proxy wages are based on the job titles delicatessen counter worker/bakery worker, and manager, fast food services. The average wage (mean) based on a forty hour work week is between $18,620.00/annually to $43,230.00/annually. This is based on the U.S. Department of Labor Bureau of Labor Statistics (2013) for the pre-injury job titles in the Dallas, Fort Worth vicinity of Texas. Her post injury wage loss falls within the range of these two figures. This is analyzing the period of time from her date of work related injury until the date the vocational evaluation was conducted. Findings are approximate in regard to duration of time while being 100% disabled with total loss of earnings.

- Given a reasonable degree of scientific certainty, it is my professional opinion that from the date of this expert's vocational evaluation of Mrs. Villines on May 30, 2014, her post injury wage loss is between 70% and 90% of her proxy wages of fast food manager at $43,230.00/annually since this has been the job that was her highest skill level that lasted over one year in duration. This will be lifetime earnings loss given her full retirement age of sixty-seven years old. There are approximately sixteen additional working years remaining. The labor market access method was also utilized for the wage loss percentage. It is safe to say that there will be several hundred thousand dollars of lost wages. Based on the United States Department of Labor Bureau of Labor statistics, the occupation of fast food manager is in demand and expected to grow. Because of Mrs. Villines physical limitations she will be unable to perform this type of work. She will be required to stand and walk for most of the day. This is based on the United States Department of Labor Dictionary of Occupational Titles 4th edition and the government resource website ONET.

16

- Given a reasonable degree of scientific certainty, it is my professional opinion that Mrs. Villines may have more significant medical findings from her left knee and leg injury but she is unable to obtain medical treatment necessary to address her issues. She indicates that there might be a finding of RSD, Reflex, Sympathetic, Dystrophy Syndrome, resulting from her injury.

- Given a reasonable degree of scientific certainty, it my professional opinion that the current gap in her employment record because of being unemployed, her post injury wages combined with her physical limitations, being in her fifth decade of life, she will encounter difficulty obtaining employment in a job search because of these reasons. This is based on my professional experience. She does not have any college background and the unemployment rate is significantly higher for non-college graduates. This will add to her future difficulty in obtaining employment. According to the United States Bureau of Labor Statistics, unemployment rate for the overall population is 7.6% approximately while unemployment rate for those with advanced degree is 3.8% approximately (May 2013). In summary, she is at a disadvantage.

- Given a reasonable degree of scientific certainty, it my professional opinion that Mrs. Villines does have limited labor market access given that she resides in a smaller city of Joshua, TX (population of 6,000 people approximately per 2010 United States Census).

Note: This vocational expert reserves the right to keep this report open if further vocational analysis on Mrs. Villines is deemed necessary.

I swear under penalty of perjury that the information contained in this report is correct to the best of my ability.

**REPORT SUBMITTED:**

Vocational Solutions, LLC
Jeffrey T. Kiel, M.Ed., CRC, CVE, CCM, CEAS, ABVE/D    6-10-14
Partner/Director of Vocational Rehabilitation Counseling
Board Certified Vocational Expert
Date Submitted: June 10, 2014

17

# Appendix A

## CURRICULUM VITAE

**VOCATIONAL SOLUTIONS, LLC www.expertwitnessovcational.com**
**11703 Huebner Road vocexpertkiel@vocsolutions.net**
**Ste # 106-458 (210) 852-5837 (ph.)**
**San Antonio, TX 78230 (210) 369-9566 (fax.)**

---

### JEFFREY T. KIEL
### BOARD CERTIFIED VOCATIONAL EXPERT

**CERTIFICATIONS/CREDENTIALS**

**ABVE/D,** Diplomate, American Board of Vocational Experts, Board Certified: #00270, current.
**CRC,** Certified Rehabilitation Counselor by the Commission on Rehabilitation Counselor Certification, current. Certification #: 00055591.
**CVE,** Certified Vocational Evaluator by the Commission on Vocational Evaluators and Work Adjustment Counselors. Currently under CRCC oversight, current.
**CCM,** Certified Case Manager by the Commission on Certified Case Managers, current.
**CEAS,** Certified Ergonomic Assessment Specialist, Back School of Atlanta, current.
**CRP,** Certified Community Rehabilitation Professional Director, through University of North Texas, current.

**PROFESSIONAL EXPERIENCE**

**Vocational Rehabilitation Counselor/Executive Director - Vocational Expert** *2004-Present*
*Vocational Solutions, LLC,* San Antonio, TX

- Evaluate the vocational potential, employability and earning capacity of able-bodied and persons' with disabilities through interviewing, record reviews, job analysis, and vocational testing to determine the individual's ability to perform competitive employment. Hired and managed employees. Calculate pre-injury and post-injury current and future earnings.
- Conduct vocational evaluations that include diagnostic vocational interview, achievement, abilities, intelligence, work samples, and career interest and values assessments. Completed 750 evaluations.
- Utilize transferability skills analysis (TSA) to determine injured persons' skills and conduct Labor Market Research Studies (LMS) to determine job availability.
- Approved vendor to the Texas Department of Assistive and Rehabilitation Services (DARS) to evaluate and place individuals' with disabilities in competitive and supported employment services positions. Conduct vocational rehabilitation counseling. Job base including oil and gas industry.
- Testimony in Personal Injury, Matrimonial, and Workers Compensation Cases.
- Written and/or verbal testimony accepted in State & District Courts in TX, CA, and OH.

**Vocational Rehabilitation Counselor – Vocational Expert** *2004-Present*
*Office of Disability Adjudication, And Review,* Texas and multi-state testimony.

- Evaluate the vocational potential and employability of able bodies and individuals with disabilities seeking Social Security Disability Cases using TSA and LMS. Testimony is based on Department of Labor (DOT) characteristics and hypothetical physical and non-exertion limitations.
- Testified in over 4,500 Social Security Disability cases.

**Vocational Rehabilitation Counselor – Vocational Expert** *2002-2005*
*Genex Services (Unum Provident),* San Antonio, TX, and *Parman Group,* Columbus, Ohio

- Interviewed, conducted record reviews, vocational testing, and Transferability Skills Analysis (TSA) to determine the individual's ability to perform competitive employment.
- Provide vocational rehabilitation counseling services such as case management, job analysis and job placement services to injured workers and Veterans. Specialized in evaluating oil and gas workers. Prepared vocational analysis forensic analysis reports for Long Term Disability cases for insurance defense.

18

- Provided Vocational Testimony in Texas Workers Compensation Cases, Defense.

**EDUCATION**

**M. Ed.,** Masters of Education, Human Resource Development, Educational Technology University of Toledo 2000.

**B.A.,** Psychology/Minor Business Administration, University of Toledo, 1998.

**Post Graduate** –One year towards M.S., Rehabilitation Counseling, Kent State University 2001.

**Post Graduate** - Certified Ergonomic Specialist, Back School of Atlanta

**Post Graduate** – University of Florida, enrolled, Life Care Planning, 2013-current

**INTERNSHIPS/PRACTICUM:**

Vocational Guidance Services, *Work Evaluator II*, (2001-2002): Clinical hours and full-time employment in vocational evaluation and situational assessment. Cleveland, OH.

Cerebral Palsy Foundation: *Clinical Intern*, Supervised by a clinical social worker and a Certified Rehabilitation Counselor, 2001, Cleveland, OH.

Work Force Investment Act: Developing training and development benchmarks for Lucas County and conducted an evaluation of job satisfaction for a Corporation, 1998-2000, Toledo, Ohio.

**PROFESSIONAL MEMBERSHIP/FACULTY POSITIONS/HONORS:**

2013, SHRM: Society for Human Resource Management, Member.

2013, Volunteer, Wounded Warrior Program through VA: San Antonio, TX. 2011, 2013 - Faculty, Wayne Wright law firm, CLE Texas BAR provider.

2011-Present, ABVE Diplomate member, American Board of Vocational Experts. Serve on Peer Review and conference planning committees.

2005-Present, Faculty, Job Coaching, Interviewing Coaching DARS program.

2006-2011, 2013, IARP, International Association of Rehabilitation Professionals, Forensics Division, Serve as a regional correspondent on membership committee.

2005-2006, SARRA, San Antonio Regional Rehabilitation Association, one year as a Board member. Planning CLE events and community fundraising for individuals with disabilities.

2006-present, Texas Rehabilitation directory of private providers.

2002-2004, NRA, National Rehabilitation Association.

2002-2003, Faculty, Veteran's Administration Vocational Rehabilitation program. Job Club moderator and facilitator.

2003- Faculty, Axia Community College, Cultural Diversity Adjunct Instructor.

**PUBLICATION/PROFESSIONAL PRSENTATION:**

Changing Tides: An Empirical Review of Vocational Expert Testimony in Social Security Disability Appeals Hearings, Kiel, Jeffrey T. Copyright @ 2013, presented to Wayne Wright Law Firm.

Rising to the Challenge: Social Security Vocational Expert Testimony Regarding Claimants' Limitations and Transferability, Kiel, Jeffrey T. Copyright @2011, presented to Wayne Wright Law Firm.

19

## VOCATIONAL WORK CONSULTED (Appendix B)

1. Dictionary of Occupational Title, Fourth Edition-Revised, U.S. Department of Labor, Employment and Training Administration/JIST Works, Inc., 1991.
2. O*NET (occupational Information Network) On Line http://online.onetonline.org
3. Job Browser Pro, Version 1.6.6 Skilltran, Spokane, WA., 2012.
4. Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, U.S. Department of Labor, Employment and Training Administration, 1993.
5. The Guide for Occupational Exploration, 2000 Edition, Farr, Ludden & Shatkin, Published by JIST Works Inc., 2000.
6. The Transitional Classification of Jobs, 6th Edition, J.E. and T.F. Field, Elliott & Fitzpatrick, Inc., 2004.
7. The Revised Handbook for Analyzing Jobs, U.S. Department Of Labor, Employment and Training Administration/JIST Works, Inc., 1991.
8. Occupational Outlook Handbook, 2011-2012 Edition, http://www.bls.gov/ooh
9. Occupational Employment Statistics, May 2011 Metropolitan and Non Metropolitan Area Occupational Employment and Wage Estimates Edinberg and McAllen, TX. http://stats.bls.gov/oes/current
10. The Vocational Expert, Revised and Updated (2005), Blackwell, Terry L. Field, Timothy F et.al Jenkins. William M, Anderson Robert M, Dietrich Wilson, L., Elliott & Fitzgerald, Inc, Athens, Georgia 2005.
11. WRAT-4, Wide Range Achievement Test, Wilkinson, Gary S. Ph.D., Robertson, Gary, J. Ph.D., Psychological Assessment Resources, Inc., 2006.
12. Forensic Casebook, Vocational and Economic Reports, The Carib Group, Elliott & Fitzpatrick, Inc., 1998.
13. Owings, Emma, J.D., Owings, Stan, M.S., A Rehabilitation Counselor's Practical and Historical Guide to Earning Capacity Assessment, Elliott and Fitzpatrick, Inc, 2007.
14. Vocational Assessment: Evaluating Employment Potential 4th edition, Havranek, Ed.D, J., Field, Ph.D., T., Grimes, J.W., Ph.D., 2005.
15. U.S. Bureau of Labor Statistics, www.bls.gov
16. Scientific vs. Non-Scientific and Related Issues and Admissibility of Testimony by Rehabilitation Consultants, Field, F. Timothy, Ph.D., Stein, David, Ph.D., Elliott & Fitzpatrick, Inc., Athens, Georgia (2002).
17. American Disability Act, www.ada.gov (2014).

20

## GLOSSARY OF TERMS (Appendix C)

**Aptitude -** The specific capacities or abilities required of an individual in order to facilitate the learning of or carrying out of some task or job duty.

**Disability -** Any physical, mental, or emotional condition that is chronic or long-lasting, which is severe enough to limit the individuals' functioning and which results in a handicap to productive activity.

**Earning Loss -** The individual's expected loss of earnings, if any, which results from the injury. Loss of earnings, if any, which results from the injury. Loss of earnings is based on history whereas loss of earning capacity is projected into the future.

**Employability -** Exists if a person possesses skills, abilities, and traits necessary to perform a job: the kinds and types of jobs which a person with a disability might be able to perform.

**Essential Functions -** (An Americans with Disabilities Act and 1973 Rehab. Act term) fundamental job duties of the employment position the individual with a disability holds or desires.

**Exertional Level -** Physical abilities, mental, and emotional disabilities which adversely affects the workers capacity to function at a job.

**Handicap -** The effect of the disability on the ability to perform gainful work.

**Illiteracy -** Inability to read or write: generally little or no formal education.

**Job Description -** Narrative description of activities and requirements of a job; does not necessarily accurately reflect what a worker will actually do in that job.

**Limited Education -** Some ability in reasoning, arithmetic, and language skills, but not enough to perform semi-skilled or skilled job: generally the 7th to 11th grades according to definition by the Social Security Administration.

**Labor Market Access (LMA) -** A method for determining the employability and loss of access to the labor market of an individual with a disability. Utilizes the vocational diagnosis and assessment of Residual Employability process (VDARE) to determine residual functional capacity.

**Loss of Access -** Generally related to the loss of access to the labor market. Persons with injuries may suffer a reduction in the numbers of jobs which are available to them as a result of reduced work life expectancy (such as earlier retirement, or part-time rather than full time work) or due to functional limitations which prevent the client from choosing certain occupations.

**Marginal Education -** Ability in reasoning, arithmetic, and language skills sufficient to perform simple, unskilled types of jobs; generally, 6th grade & below.

**Mobility Limitations -** Function of getting from one place to another is limited; may be caused either by physical disability or environment barriers.

**Non-Exertional Impairment -** Does not limit physical exertion and does not directly affect ability to sit, stand, walk, lift, carry, push, or pull; does have impact on ability to work.

**Pain Limitation -** Pain refers to an unpleasant sensation characterized by throbbing, aching, shooting, or other unpleasant feelings associated with bodily injury or disorder. When pain is continuing, unremitting, uncontrollable, and severe, it may constitute a severe functional limitation to normal living.

**Partial Disability -** Exists if the individual cannot perform some or all of the work for which he or she was fitted prior to injury.

**Physical Demands -** The physical requirements made on the worker by the specific job worker situation.

**Place-ability - Economic** conditions and employer attitudes are such that a person can actually be placed in a job, the difficulty in placing a person with disability in a job.

**Residual Functional Capacity -** A disabled person's remaining physical and mental work potential and capacity.

**Skill Level -** Level of knowledge of work activity and degree of judgment required to perform a certain

21

job; includes unskilled, semi-skilled, and skilled.

**Temperament -** Personal traits consisting of the individual's characteristic mode or inclination of emotional response.

**Total Disability -** Exists if the individual is unable to return to pre-injury employment and unable (due to an injury) to obtain employment with similar livelihood.

**Transferability of Skills -** Skills that were used in one job can be interchanged or substituted into another job; used to determine the employability of a person.

**VDARE Process -** (Vocational Diagnosis and Assessment of Residual Employability) uses client's work history as a basis upon which to build an assessment of client vocational functioning capabilities.

**Vocational Assessment -** Process by which vocational expert determines loss of vocational functioning due to a disability and helps clients to correlate their characteristics as workers with the characteristics of occupations.

**Vocational Rehabilitation Services -** Services designed to enable a handicapped person to secure and retain employment.

**Wage Loss Analysis -** A procedure which addresses the amount of wage lost to a worker as a result of an injury.

**Work Tolerance -** Ability to sustain a work effort for a prolonged period time, ability to maintain a steady flow of production at an acceptable pace and acceptable level of quality, ability to handle a certain amount of pressure.

**Worker Trait -** The requirement made of the worker in terms of aptitudes, general educational development, vocational preparation, physical demands, and personal traits.

---

**Resources: Vocational Evaluation and Work Adjustment Standards With Interpretive Guidelines and VEWAA Glossary, Copyright, 1977. All rights reserved by the vocational evaluation and work adjustment association.**

## Attachment D

Beall & Biehler, Attorney Josh Harris, Esq., Albuquerque, NM – Defense Personal Injury, Oil and Gas
Tommy Joe Jensen et al v. LRE Operating Et al, and Lime Rock Resources A, L.P.
Cause #: D-101-CV-2012-01285
Santa Fe County, 1st Judicial District

Daughty, Alcaraz & deGraaw, Alburquerque NM – Defense Personal Injury, contract self-employment case
Juarez et al v. McCarthy Building Companies
Cause #: D-0101-CV-2013-00273
Santa Fe County, 1st Judicial District

Attorney Michael J. Cisneros: McAllen, TX – Plaintiff Personal Injury
Cause #: C-3287-11-J, In the 430th Judicial District Court of Hildalgo County, TX
Jose Villarreal Jr. Vs. JNAA Enterprises, LLC & Sam Popovich

Gene Toscano, Inc.: SanAntonio, TX – Plaintiff Personal Injury, Traumatic Brain Injury, testified trial by Jury
Cause # 2011-CI-11485 Kathryn E. Dillard U.S. Abraham Garza Sierra et al, in the 225th Judicial Court
Bexar County, TX

Gene Toscano, Inc., San Antonio, TX – Plaintiff Personal Injury
Cause # 2013-CI-10505, J Carmen Sandoval vs. Ricardo Tarango & ARI Fleet LT LSR In the 131st Judicial Court District
Bexar County, TX.

Attorney Lori Serratelli, Serratelli, Schiffman & Brown, PC – Family Dissolution
Dickerson vs. Dickerson, Pennsylvania, Common Pleas of Cumberland County, PA.
Case No. 043112233 99 S 2011

Attorney Jeffrey Nunnarri, Toledo, OH – Family Dissolution
Case No, 2013-DR-0146, Mandy Buckland Meyercord V. Robert Meyercord, in the Court of Common Please Hancock
County, OH.

Cole, Fisher, Bosquez-Flores, Cole, and O'Keefe, Fresno, California – CA Worker's Compensation
Cause #ADJ841052, Maria Isabel Servin De Leon (Leticia Castel vs. Grover Gonzalez and state compensation Insurance
Fund)

The Law Office of Kenneth Nollen Bethune, Oklahoma City, OK – Federal ADA
Brent Rhodes V. Southern Nazarene University
Cause # CIV-11-71-F

Winner & Carson P.C., Las Vegas, Nevada – Plaintiff Personal Injury
Angel Fisher vs. Bellagio Casino-Hotel: Bellagio LLC:
Eight Judicial District Court
Cause #A-10-632371-C
Note: I partnered with a second vocational expert. I conducted the vocational evaluation.

Gonzales Palacios, LLP, McAllen, TX – Plaintiff Personal Injury
Cause No. C-311-08-C Jorrge Avilla, SR and Dianiva, Individually and as Next Friends of Jorge Avila, Jr. V. Rafael Svilla
& RGV Pizza Hut LLC, d/b/a Pizza Hut of McAllen et al: In the 139th Judicial District Court of Hidalgo County, TX

Modjarad & Abusaad Law Firm, Dallas, TX – Plaintiff Personal Injury
Victor Sandoval V. The Estate of Mohammad Rage, On Time Express Logistics L.L.C., Summit Contracting, LTD, AND
Anderson Columbia Co, Inc.
81 St LASalle County District Court
Cause #: 12-04-000479-CV

Additionally, I testified in over 4,500 SSI/SSDI administrative hearings as a vocational expert through the Office of
Disability, Adjudication, and Review as of June 10, 2014

23